UNIVERSITY OF MICHIGAN BOARD OF REGENTS v DEPARTMENT OF TREASURY

Docket No. 171668. Submitted February 7, 1996, at Lansing. Decided July 23, 1996, at 9:25 A.M.

The University of Michigan Board of Regents petitioned the Court of Claims for review of an assessment by the Department of Treasury of sales and use tax that the university paid under protest. The court, James R. Giddings, J., granted summary disposition for the petitioner and ordered a refund of the sales tax assessment and a partial refund of the use tax assessment. The respondent appealed, and the petitioner cross appealed with regard to the portion of the use tax assessment upheld by the Court of Claims.

The Court of Appeals *held*:

1. The Court of Claims properly found that sales tax should not be assessed with regard to photocopies made by students and others at photocopier machines in the university's libraries, student dormitories, and student union, for replacement diplomas, or for meals provided to participants in the Executive Development Program and summer sports camp.

2. The Court of Claims erred in finding that use tax was properly assessed with regard to student housing used by Executive Development Program participants and with regard to guest rooms and cots used by overnight visitors at the Martha Cook Residence Hall.

Affirmed in part and reversed in part.

1. TAXATION — GENERAL SALES TAX ACT — WORDS AND PHRASES — "SALE AT RETAIL" — "BUSINESS."

The General Sales Tax Act imposes a tax on all persons engaged in the business of making sales at retail; "sale at retail" means a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any purpose other than resale; "business" means an activity engaged in by a person or caused to be engaged in by that person with the object of gain, benefit, or advantage, either direct or indirect (MCL 205.51[1][b],[j], 205.52[1]; MSA 7.521[1][b],[j], 7.522[1]).

2. TAXATION — GENERAL SALES TAX ACT — NONPROFIT EDUCATIONAL INSTITU-
TIONS — SALES OF FOOD — BONA FIDE ENROLLED STUDENTS.

The General Sales Tax Act provides that sales of food by nonprofit
educational institutions to bona fide enrolled students are exempt
from sales tax; bona fide enrolled students, whether enrolled in
continuing education programs or degree-granting programs, are
participants who attend classes, receive instruction, and perform
other actions normally associated with being a student; bona fide
elementary, secondary, or high school students attending a summer
camp offered by a college athletic department are bona fide
enrolled students (MCL 205.54a[c]; MSA 7.525[c]).

3. TAXATION — USE TAX ACT — ACCOMMODATIONS — WORDS AND PHRASES —
"BUSINESS" — "MEMBERSHIP."

The Use Tax Act imposes a tax on the use or consumption of rooms
or lodging furnished by hotelkeepers, motel operators, and other
persons furnishing accommodations that are available to the public
on the basis of a commercial and business enterprise, irrespective
of whether membership is required for use of the accommodations;
"business" is an activity engaged in with the object of gain, benefit,
or advantage, either direct or indirect; "membership" is not synony-
mous with admission to and enrollment in a university program
(MCL 205.92[h], 205.93a; MSA 7.555[2][h], 7.555[3a]).

*Maria G. Alfaro-Lopez*, for the University of Michi-
gan Board of Regents.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, and *Russell E. Prins* and
*Michael R. Bell*, Assistant Attorneys General, for the
Department of Treasury.

Amici Curiae:

*Eileen Jennings*, for Central Michigan University.

*Kenneth McKanders*, for Eastern Michigan
University.

*Steven Dykema*, for Ferris State University.

*Thomas Butcher*, for Grand Valley State University.

*Sally Harwood*, for Michigan State University.

*Charles A. Duerr, Jr.*, for Northern Michigan University.

*Susan Gerrits*, for Oakland University.

*William C. Collins*, for Saginaw Valley State University.

*Daniel Bernard*, for Wayne State University.

*Keith A. Pretty*, for Western Michigan University.

Before: TAYLOR, P.J., and MacKENZIE and M. J. TAL-BOT,* JJ.

MacKENZIE, J. Following a sales and use tax audit for the period of December 1, 1981, to June 30, 1983, respondent Department of Treasury assessed against the University of Michigan sales tax in the amount of $62,829.46 inclusive of interest, and use tax in the amount of $17,030.91 inclusive of interest. The university paid the assessments under protest and petitioner the University of Michigan Board of Regents sought review and a refund in the Court of Claims. The court granted summary disposition for the university pursuant to MCR 2.116(C)(10) and ordered a refund of the sales tax assessment and a partial refund of the use tax assessment. The Department of Treasury appeals as of right from the grant of summary disposition for the university, and the university cross appeals as of right with regard to the portion of the use tax assessment upheld by the Court of Claims. Ferris State University, Michigan State University, Eastern Michigan

---

*Circuit judge, sitting on the Court of Appeals by assignment.

University, Saginaw Valley State University, Central Michigan University, Grand Valley State University, Oakland University, Northern Michigan University, Western Michigan University, and Wayne State University have filed an amici curiae brief aligned with the University of Michigan's position. We affirm in part and reverse in part.

### THE SALES TAX ASSESSMENT

The General Sales Tax Act, MCL 205.51 *et seq.*; MSA 7.521 *et seq.*, imposes on "all persons engaged in the business of making sales at retail" a tax "for the privilege of engaging in that business." MCL 205.52(1); MSA 7.522(1). "Sale at retail" means "a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any purpose other than for resale." MCL 205.51(1)(b); MSA 7.521(1)(b).

As relevant to this appeal, the sales tax assessment against the university covered (1) photocopies costing five cents each made by students or others at photocopier machines placed at the university's libraries, student dormitories, and student union, (2) replacement diplomas ordered by graduates, costing $5 each, (3) meals provided to participants in the Executive Development Program, a three- to four-week residential nondegree-granting program offered through the university's Graduate School of Business Administration that teaches business theory and techniques to corporate executives, and (4) meals provided to participants in five of sixteen summer sports camps for students ages eight to eighteen. The Court

of Claims ruled that the department's assessment regarding each of these items was unlawful. This ruling forms the basis of the department's appeal.

We find no error in the Court of Claims' determination that photocopies made by students were not subject to sales tax. Fundamentally, the sales tax is a tax upon sellers for the privilege of engaging in the business of making retail sales of tangible personal property. *Terco, Inc v Dep't of Treasury*, 127 Mich App 220, 225-226; 339 NW2d 17 (1983). "Business" is defined in the sales tax act as "an activity engaged in by a person or caused to be engaged in by that person with the object of gain, benefit, or advantage, either direct or indirect." MCL 205.51(1)(j); MSA 7.521(1)(j). The university was not in the business of selling photocopies as a retail enterprise with a profit-making objective; the five-cent charge closely approximated the actual cost of one photocopy. Rather, the university provided an academic library, and the convenience of and charge for photocopies were an incidental part of library operations.

The Wisconsin Court of Appeals addressed an analogous situation in *Frisch, Dudek & Slattery, Ltd v Dep't of Revenue*, 133 Wis App 2d 444; 396 NW2d 355 (1986). In *Frisch*, the Wisconsin Department of Revenue determined that a law firm should be required to pay a sales tax for photocopies billed to its clients. The court disagreed. Although the firm separately invoiced the photocopies when it billed its clients, the *Frisch* court concluded that any "sale" of photocopies was not in the nature of a retailer's "mercantile transaction," but, instead, was incidental to the legal services provided. Because the law firm was not a retailer of photocopies, the court held that no sales

tax could be imposed on its client photocopying charges. *Id.* at 447-449.

Just as the photocopies in *Frisch* were not supplied as part of a mercantile transaction, the photocopies in this case were not sold at retail to generate a profit. Rather, students' use of the photocopier machines was incidental to the library's circulation services and the university's educational mission. The photocopies produced by students were therefore not subject to sales tax.

We also find no error in the Court of Claims' determination that replacement diplomas were not subject to sales tax. The court concluded that the university, by offering replacement diplomas for $5, was offering a customized service to which the tangible paper was merely incidental. This conclusion is consistent with *DAIIE v Dep't of Treasury*, 138 Mich App 696; 361 NW2d 373 (1984), where this Court held that the sale of a customized computer software program was not subject to the sales tax because the purchaser was paying for the service of having a personalized program produced. " 'The focus of the instant transaction is on the personalized service of the software vendors, an intangibles transaction.' " *Id.* at 699, quoting *Maccabees Mutual Life Ins Co v Dep't of Treasury*, 122 Mich App 660, 666; 332 NW2d 561 (1983). Similarly, in this case, the purchaser of a replacement diploma was paying for the services of the university's office of the registrar in reviewing its records and then producing a document containing highly personalized information, including the name of the graduate, the degree obtained, and the date of graduation. The Court of Claims correctly found the department's

sales tax assessment on replacement diplomas to be invalid.

We next turn to the department's contention that the Court of Claims erred in its determination that the meals provided to Executive Development Program participants and to summer sports camp participants were not subject to sales tax. Under subsection 4a(c) of the sales tax act, MCL 205.54a(c); MSA 7.525(c), sales of food to "bona fide enrolled students" by non-profit educational institutions such as the university are exempt from sales tax. The department contends that persons attending the two programs were not bona fide enrolled students and, therefore, their meals were taxable. We disagree.

With regard to the Executive Development Program, the department argues that students enrolled in the program are not "bona fide" because they are enrolled in a continuing education program rather than a degree-granting program. While we are aware that the department has made this distinction in the past, we also recognize that its interpretation is not binding on this Court and that the plain language of the statute controls. See *Ludington Service Corp v Acting Comm'r of Ins*, 444 Mich 481, 505; 511 NW2d 661 (1994).

Black's Law Dictionary (6th ed, 1990) defines "bona fide" as "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud . . . [t]ruly; actually; without simulation and pretense." *Random House Webster's College Dictionary* (1995) defines "bona fide" as "made, done, etc., in good faith; without deception or fraud . . . authentic; genuine; real." Given these definitions, the qualification of "enrolled students" by the phrase "bona fide" appears to be

intended to prevent the application of the exemption to persons who are merely names on the rolls and who do not actually function as students, such as persons visiting classes.

We agree with the Court of Claims that there was nothing less than bona fide about the students enrolled in the Executive Development Program. During their enrollment, they engaged in the same scholastic activities as students in degree-granting programs with the same broad objectives of improving skills and furthering knowledge. As the Court of Claims stated, "to assess a tax on no other basis than a distinction between certificate [-granting programs such as the Executive Development Program] and degree-granting programs may well be arbitrary." We agree with the court that because the Executive Development Program participants attended classes, received instruction, and performed other actions normally associated with being a student, they were "bona fide enrolled students," and the meals sold to them by the university were exempt from sales tax.

We also agree with the Court of Claims that the meals sold to summer sports camp participants were exempt from sales tax. Again, the issue is whether the sports camp participants were "bona fide enrolled students" for purposes of MCL 205.54a(c); MSA 7.525(c). In this regard, we note that the Commissioner of Revenue has previously ruled that high school students attending a summer camp offered by a college athletic department are "bona fide enrolled students" because they are "bona fide *high school* students." 1974 Letter Rulings, LR 74-2 (February 15, 1974). We find this reasoning persuasive. Although, as the department points out, some students attending

the sports camps in this case were enrolled in elementary or middle school instead of high school, there is no principled reason why the same logic should not apply. Because the students at the summer sports camps were bona fide elementary or secondary school students, the meals sold to them by the university were exempt from sales tax. We find no error in the Court of Claims' determination that the department's sales tax assessment was invalid.

#### THE USE TAX ASSESSMENT

The Michigan use tax is an excise tax imposed for the " 'privilege of using, storing, or consuming tangible personal property in this state.' " *Combustion Engineering, Inc v Dep't of Treasury*, 216 Mich App 465, 468; 549 NW2d 364 (1996), quoting MCL 205.93(1); MSA 7.555(3)(1). The Use Tax Act, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*, applies to, among other items, the rental of hotel rooms and similar accommodations. Section 3a, MCL 205.93a; MSA 7.555(3a), imposes a tax on the "use or consumption" of

*        *        *

    (b) Rooms or lodging furnished by hotelkeepers, motel operators, and other persons furnishing *accommodations that are available to the public on the basis of a commercial and business enterprise*, irrespective of whether or not membership is required for use of the accommodations, except rooms and lodging rented for a continuous period of more than 1 month. [Emphasis added.]

As relevant to the university's cross appeal, the department assessed the use tax on Executive Development Program participants' student housing and on

guest rooms and cots used by overnight visitors at Martha Cook Residence Hall. The Court of Claims upheld the assessment. We conclude that the court erred in ruling that these accommodations were subject to the use tax.

In ruling that student housing for Executive Development Program enrollees was subject to the use tax, the Court of Claims determined that admission in the program was akin to membership in an exclusive club, and that the housing was "available to the public . . . irrespective of whether membership is required." We agree with the university, however, that the word "membership" is not commonly used to connote the status of an enrolled student at a college. Unless specially defined, words in a statute are accorded their plain and ordinary meaning, MCL 8.3a; MSA 2.212(1), and tax laws will not be extended in scope by implication or by a forced construction. *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994). To state that "membership" is synonymous with admission to and enrollment in a university program requires the meaning of membership to be extended beyond its everyday usage, and we decline to apply such a forced construction.

The Executive Development Program accommodations were not open to the general public; only admitted students could use them. Nor were they available "on the basis of a commercial and business enterprise." "Business" is defined in subsection 2(h) of the Use Tax Act, MCL 205.92(h); MSA 7.555(2)(h), as an activity engaged in "with the object of gain, benefit, or advantage, either direct or indirect." Providing housing for the program's students was not done with

the object of gain, but to facilitate the educational purpose of the program through on-site residency. Accordingly, the lodging was not subject to the use tax.

Similarly, the use of the overnight guest rooms and cots at Martha Cook Residence Hall was not taxable under MCL 205.93a; MSA 7.555(3a). This dormitory is for women only, and its facilities were available only to the residents and their approved guests. The accommodations, therefore, were not available to the general public. Moreover, the rooms and cots were not provided as a business enterprise, but, instead, were supplied as an adjunct to the students' non-taxed dormitory rooms in order to provide residents with approved overnight dormitory space for their guests. The fees charged covered the cost of maintenance and providing fresh linens and were not assessed with the objective of making a profit. Therefore, like the Executive Development Program housing, the accommodations at Martha Cook Hall were not subject to the use tax.

Affirmed in part and reversed in part.