Talbot, J.
 

 This case involves the state’s imposition of motor fuel taxes and sales taxes on the gasoline and diesel fuel sold by plaintiffs to end-use consumers. Plaintiff is a Michigan corporation that owns a “duty-free” retail facility in the city of Detroit immediately adjacent to the Ambassador Bridge, which links the United States to Canada. Plaintiff’s facility sells a variety of goods in “personal use” quantities, including gasoline and diesel fuel dispensed directly into the fuel tanks of its customers’ vehicles. Every customer entering plaintiff’s facility must exit the facility over the Ambassador Bridge into Canada. The fuel dispensing tanks on plaintiff’s property are located less than two miles from the border between the United States and Canada. All of the roads from plaintiff’s facility to Canada, including the Ambassador Bridge, are privately owned.
 

 
 *459
 
 Since January 1, 1994, plaintiff has paid sales taxes and motor fuel taxes on its sales of motor fuel under protest. Plaintiff filed this action seeking a refund of the sales taxes and motor fuel taxes it paid under protest. In its complaint, plaintiff pleaded a variety of statutory and constitutional grounds. The case was submitted on stipulated facts to the Court of Claims, which entered an order of judgment in favor of the state. Plaintiff appeals as of right, and we affirm.
 

 i
 

 The motor fuel tax act, MCL 207.101
 
 et seq.)
 
 MSA 7.291
 
 et seq.,
 
 imposes a tax at a specific rate per gallon on all gasoline and diesel fuel sold in Michigan or used in propelling motor vehicles on the public roads and highways of Michigan. See MCL 207.102; MSA 7.292;
 
 Roosevelt Oil Co v Secretary of State,
 
 339 Mich 679, 685-686; 64 NW2d 582 (1954). The puipose of the act is to “prescribe a privilege tax for the use of the public highways by owners and drivers of motor vehicles.” See
 
 Roosevelt, supra
 
 at 685. Although the tax is intended to be imposed on the ultimate consumer of gasoline or diesel fuel, it is collected by the supplier at the time of distribution. See MCL 207.108a; MSA 7.298(1);
 
 Roosevelt, supra
 
 at 686. In this case, plaintiff paid the motor fuel taxes “up front” when it purchased the gasoline and diesel fuel from its suppliers. The suppliers were required to remit the tax to the state, and plaintiff, in turn, had the ability to pass on the economic burden of the tax by including the amount of the tax in the price of the gasoline and diesel fuel sold to its customers. Finally, the motor fuel tax act provides that the .“purchaser” of gasoline or diesel fuel used for a purpose other than the opera
 
 *460
 
 tion of a motor vehicle on Michigan’s public roads and highways may file a claim for a refund of the taxes paid. See MCL 207.112(2); MSA 7.302(2), MCL 207.122(3); MSA 7.316(2)(3).
 

 The General Sales Tax Act, MCL 205.51
 
 et seq.;
 
 MSA 7.521
 
 et seq.,
 
 imposes a tax measured by a percentage of the gross proceeds of a business. See MCL 205.52; MSA 7.522. The sales tax is imposed on the seller for the privilege of engaging in the business of making retail sales of tangible personal property in Michigan. E.g.,
 
 Univ of Michigan Bd of Regents v Dep’t of Treasury,
 
 217 Mich App 665, 669; 553 NW2d 349 (1996). Although the legal incidence of the sales tax falls on the retañer, the retañer is authorized to pass the economic burden of the tax onto the purchaser by coUecting an equal amount at the point of sale. See
 
 World Book, Inc v Dep’t of Treasury,
 
 459 Mich 403, 408; 590 NW2d 293 (1999);
 
 Nat'l Bank of Detroit v Dep’t of Revenue,
 
 334 Mich 132, 138; 54 NW2d 278 (1952). When the property sold at retail is gasoline, the sales tax is collected from the retailer before the sale in much the same manner as motor fuel taxes are coUected. See MCL 205.56a; MSA 7.527(1).
 

 n
 

 Plaintiff argues that the state’s imposition of the taxes at issue in this case constituted a violation of the Import-Export Clause of the United States Constitution, which provides as follows:
 

 No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what
 
 *461
 
 may be absolutely necessary for executing its inspection Laws .... [US Const, art I, § 10, cl 2.]
 

 Under the “modem” approach to the Import-Export Clause, first announced in
 
 Michelin Tire Corp v Wages,
 
 423 US 276; 96 S Ct 535; 46 L Ed 2d 495 (1976), the primary focus is on the nature of the tax itself (i.e., whether it was an “impost” or “duty” within the meaning of the constitution) rather than on the nature of the item taxed (i.e., whether it was an “import” or “export” within the meaning of the constitution). See
 
 Itel Containers Int’l Corp v Huddleston,
 
 507 US 60, 76; 113 S Ct 1095; 122 L Ed 2d 421 (1993);
 
 Limbach v Hooven & Allison Co,
 
 466 US 353, 359-360; 104 S Ct 1837; 80 L Ed 2d 356 (1984);
 
 Washington Dep’t of Revenue v Ass’n of Washington Stevedoring Cos,
 
 435 US 734, 751-753; 98 S Ct 1388; 55 L Ed 2d 682 (1978). The Supreme Court has identified three policy considerations underlying the clause:
 

 [1] [T]he Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; [2] import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and [3] harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.
 
 [Michelin, supra
 
 at 285-286.]
 

 A tax is considered an “impost” or “duty” if its imposition offends one of these policy considerations. See, e.g.,
 
 Washington Stevedoring, supra
 
 at 752. Before
 
 *462
 

 Michelin,
 
 it was simply assumed that all taxes on imports and exports were prohibited. The issue in those cases was merely whether the item taxed was an import or export. See
 
 Washington Stevedoring, supra
 
 at 751-752 (citing cases). This view was espoused by the United States Supreme Court in
 
 Richfield Oil Corp v State Bd of Equalization,
 
 329 US 69, 77-78; 67 S Ct 156; 91 L Ed 80 (1946), which held that the imposition of a nondiscriminatory state sales tax on the sale of oil intended for exportation from California to New Zealand ran afoul of the Import-Export Clause.
 

 Plaintiff relies on
 
 Richfield Oil
 
 for the proposition that Michigan cannot constitutionally impose sales or motor fuel taxes on the gasoline and diesel fuel sold at its facility. The state, on the other hand, contends that the Supreme Court’s holding in
 
 Richfield Oil
 
 has been undermined by the
 
 post-Michelin
 
 approach to Import-Export Clause jurisprudence. The
 
 Richfield Oil
 
 case, which has never been expressly overruled, involved a tax imposed directly on goods in export transit.
 
 [1]
 
 See
 
 Richfield Oil, supra
 
 at 84. The same cannot be said of
 
 Michelin
 
 or
 
 Washington Stevedoring.
 
 See
 
 United States v Int’l Business Machines Corp,
 
 517 US 843, 861; 116 S Ct 1793; 135 L Ed 2d 124 (1996). In
 
 Washington Stevedoring, supra
 
 at 757, n 23, the Court specifically noted that it “did not reach the question of the applicability of the
 
 Michelin
 
 approach when a State directly taxes imports or
 
 *463
 
 exports in transit.” More recently, in
 
 Int'l Business Machines, supra
 
 at 862, the Court explained that it “has never upheld a state tax assessed directly on goods in import or export transit.” Accordingly, we must conclude that
 
 Richfield Oil
 
 has precedential value. See
 
 Rodriguez de Quijas v Shearson/American Express, Inc,
 
 490 US 477, 484; 109 S Ct 1917; 104 L Ed 2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”); see also
 
 Virginia Indonesia Co v Harris Co Appraisal Dist,
 
 910 SW2d 905, 911-912 (Tex, 1995).
 

 Despite our determination that
 
 Richfield Oil
 
 has precedential value, we are not persuaded that it requires reversal in this case. The California sales tax at issue in
 
 Richfield Oil
 
 was imposed on the sale of oil placed in the storage tanks of a ship bound for New Zealand.
 
 Richfield Oil, supra
 
 at 71. The Court determined that the oil was an “export” within the meaning of the Import-Export Clause because at the time it was taxed it had already begun its movement toward an intended foreign destination. See
 
 id.
 
 at 82-83. Under the “stream of export” doctrine, exportation commences when an article begins its physical entry into the export stream, which is its final, continuous journey out of the country. See
 
 Washington Stevedoring, supra
 
 at 752;
 
 Kosydar v Nat’l Cash Register Co,
 
 417 US 62, 66-71; 94 S Ct 2108; 40 L Ed 2d 660 (1974);
 
 Coe v Errol,
 
 116 US 517, 527; 6 S Ct 475; 29 L Ed 715 (1886). The word “export” means the transportation of goods from the United States to a
 
 *464
 
 foreign country.
 
 Swan & Finch Co v United States,
 
 190 US 143, 145; 23 S Ct 702; 47 L Ed 984 (1903). “[E]xportation is a severance of goods from the mass of things belonging to this country with an intention of uniting them to the mass of things belonging to some foreign country.”
 
 Id.
 
 Thus, an article does not constitute an “export” if there exists a practical possibility of diversion to domestic markets. See
 
 Joy Oil Co v State Tax Comm of Michigan,
 
 337 US 286, 288; 69 S Ct 1075; 93 L Ed 1366 (1949), citing
 
 Richfield Oil, supra
 
 at 82. Similarly, an article cannot be considered an “export” within the meaning of the Import-Export Clause if “it will be used in this country for its designed purpose, before being shipped abroad.” See
 
 Itel Containers, supra
 
 at 82 (Scalia, J., concurring), citing
 
 Richfield Oil, supra;
 
 cf.
 
 Dep’t of Revenue v Midstream Fuel Service, Inc,
 
 521 So 2d 75, 80 (Ala Civ App, 1988);
 
 Shell Oil Co v State Bd of Equalization,
 
 64 Cal 2d 713, 718-719; 51 Cal Rptr 524; 414 P2d 820 (1966).
 

 Bearing these concepts in mind, we conclude that the gasoline and diesel fuel purchased at plaintiffs facility did not constitute “exports” within the meaning of the Import-Export Clause. It is clear that the end-use consumers who purchased fuel at plaintiffs facility in Michigan necessarily were required to use a portion of that fuel for its designed purpose within the United States before entering Canada. Accordingly,
 
 Richfield Oil
 
 is not directly applicable to the facts in this case. As Justice Scalia noted in his concurring opinion in
 
 Itel Containers, supra
 
 at 82, no portion of the “export” in
 
 Richfield Oil
 
 was ever “used or consumed in the United States” and there was no probability that it would be “diverted to
 
 *465
 
 domestic use.” Because a portion of the fuel purchased by each of plaintiff’s customers was necessarily used within the United States, the transactions at issue in this case did not involve exportation.
 
 [2]
 
 To the contrary, they were merely domestic transactions occurring at a location near the international border.
 

 For much the same reason, we also conclude that the tax at issue was not an “impost” or “duty” within the meaning of the Import-Export Clause as described in
 
 Michelin, supra.
 
 First, because the economic burden of the challenged taxes fell directly on end-use consumers purchasing fuel in the United States for immediate consumption, the taxes cannot be said to have affected the foreign policy of the United States. Second, because this case does not in any way involve importation, the taxes at issue could not have affected the federal government’s ability to generate import revenues. Finally, because the fuel sales in this case were made to end-use consumers in Michigan, the state of Michigan cannot be said to have exploited its geographic location to the detriment of her sister states, nor can the taxes at issue be described as improper exactions on goods in export transit from other states. See
 
 Michelin, supra
 
 at 285-286; cf.
 
 Arizona Dep’t of Revenue v Robinson’s Hardware,
 
 149 Ariz 589, 593-594; 721 P2d 137 (1986). Therefore, we hold that plaintiff is not entitled to relief under the Import-Export Clause.
 

 
 *466
 
 m
 

 Plaintiff next argues that the state’s imposition of the taxes at issue in this case amounted to a violation of the Commerce Clause of the United States Constitution, which grants Congress the power to regulate commerce with foreign nations and among the states. See US Const, art I, § 8, cl 3. In particular, plaintiff contends that the taxes at issue interfered with the federal government’s ability to regulate foreign commerce. We disagree.
 

 With regard to interstate commerce, a state tax will be sustained against a Commerce Clause challenge if it (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to services provided by the state. See
 
 Japan Line, Ltd v Los Angeles Co,
 
 441 US 434, 444-445; 99 S Ct 1813; 60 L Ed 2d 336 (1979). Two additional factors must be considered when a state “seeks to tax the instrumentalities of foreign commerce.”
 
 Id.
 
 at 446. The first is whether the tax, notwithstanding apportionment, creates a substantial risk of international multiple taxation. The second is whether the tax prevents the federal government from speaking with one voice when regulating commercial relations with foreign governments.
 
 Id.
 
 at 451.
 

 Plaintiff has squarely addressed only three of the factors listed above. First, plaintiff claims that the motor fuel tax was not fairly apportioned because the vehicles leaving its facility necessarily enter Canada without traveling over any public roads or highways in Michigan. This claim is without merit. Because the motor fuel tax act entitles fuel purchasers to receive
 
 *467
 
 a refund for taxes paid on gasoline or diesel fuel used for a purpose other than the operation of a motor vehicle on Michigan’s public roads and highways, see MCL 207.112(2); MSA 7.302(2), MCL 207.122(3); MSA 7.316(2)(3), there is no apportionment problem.
 

 Second, plaintiff claims that Michigan’s sales tax, when applied to the sale of fuel at its facility, creates a substantial risk of international multiple taxation. This claim is also without merit. Because a sale of goods is a discrete taxable event involving payment and delivery in the taxing state that is “facilitated by the laws and amenities of the place of sale,” it does not afford the opportunity of multiple taxation of the same activity. See
 
 Oklahoma Tax Comm v Jefferson Lines, Inc,
 
 514 US 175, 186, 190-191; 115 S Ct 1331; 131 L Ed 2d 261 (1995);
 
 Wardair Canada, Inc v Florida Dep’t of Revenue,
 
 477 US 1, 9; 106 S Ct 2369; 91 L Ed 2d 1 (1986); see also
 
 W R Grace & Co—Conn v Washington Dep’t of Revenue,
 
 137 Wash 2d 580, 628-629; 973 P 2d 1011 (1999).
 

 Finally, plaintiff maintains that the taxation of the motor fuel sold for “export” to Canada at its “duty free” facility unconstitutionally prevented the federal government from speaking with “one voice” regarding commercial relations with Canada because it interfered with the “free flow of goods from this country.” Again, we disagree. The purpose of the “one voice” inquiry is to determine whether the challenged state tax unconstitutionally impairs the federal government’s ability to speak with one voice when regulating commercial relations with foreign governments. See
 
 Japan Line, supra
 
 at 448. To reiterate what we have already concluded above, the taxes at issue in this case cannot be said to have affected the foreign
 
 *468
 
 policy of the United States because the economic burden of the taxes fell directly on end-use consumers purchasing fuel for immediate consumption in discrete transactions occurring entirely within the United States. For the reasons stated, we hold that plaintiff is not entitled to relief under the Commerce Clause.
 

 IV
 

 Plaintiff makes two equal protection arguments. First, plaintiff asserts that by not imposing any tax on the goods sold at its facility apart from motor fuel, the state has violated the Equal Protection Clause by taxing motor fuel differently than other goods. This argument is ludicrous. The equal protection doctrine mandates that
 
 persons
 
 in similar circumstances be treated similarly. E.g.,
 
 Dowerk v Oxford Charter Twp,
 
 233 Mich App 62, 72-73; 592 NW2d 724 (1998). It does not mandate that
 
 products
 
 in similar circumstances be treated similarly.
 

 Plaintiff’s second equal protection argument more properly focuses on the law’s treatment of it as compared to other persons. Plaintiff contends that the state’s application of the motor fuel tax to retail sales at its facility coupled with the Treasury Department’s position exempting automobile manufacturers from taxation on gasoline placed in new vehicles shipped out of Michigan violates the state and federal Equal Protection Clauses. We disagree.
 

 As . a general rule, legislative enactments are clothed in a presumption of constitutionality. This presumption is particularly strong where tax legislation is concerned.
 
 Taxpayers United for the Michigan Constitution, Inc v Detroit,
 
 196 Mich App 463,
 
 *469
 
 466-467; 493 NW2d 463 (1992). The Equal Protection Clause requires equal treatment for similarly situated taxpayers. See
 
 Armco Steel Corp v Dep’t of Treasury,
 
 419 Mich 582, 592; 358 NW2d 839 (1984). Thus, disputed classifications must have a rational basis.
 
 Id.
 
 A rational basis shall be found to exist if any set of facts reasonably can be conceived to justify the alleged discrimination.
 
 Syntex Laboratories v Dep’t of Treasury,
 
 233 Mich App 286, 290; 590 NW2d 612 (1998). A discriminatory classification that has a rational basis is not invalid simply because it is not mathematically precise in its discrimination or because it results in some inequity.
 
 Id.
 
 at 290-291. In this case, we conclude that the classification separating plaintiff from automobile manufacturers putting gasoline in vehicles shipped out of Michigan had a rational basis. Plaintiff is a retail dealer selling gasoline to end-use consumers within the state of Michigan. In contrast, the gasoline included in the supply tanks of vehicles shipped out of Michigan would necessarily be purchased by end-use consumers outside the state of Michigan. Given that the stated purpose of the motor fuel tax is to tax drivers for the privilege of using Michigan’s public highways,
 
 Roosevelt, supra
 
 at 685, the disputed classification is entirely logical.
 

 Plaintiff also contends, without additional argument, that the state’s tax scheme was in violation of the state constitution’s Uniformity of Taxation Clause, Const 1963, art 9, § 3. As a practical matter, there is no discernible difference between the Equal Protection and Uniformity of Taxation Clauses.
 
 Syntex Laboratories, supra
 
 at 290. Accordingly, we need not address this particular aspect of plaintiffs argument.
 

 
 *470
 
 v
 

 Finally, in addition to its constitutional arguments, plaintiff contends that terms of the motor fuel tax act entitle it to a refund of the taxes paid. We disagree. As noted above, the tax act allows a “purchaser” of gasoline used for a purpose other than the operation of a motor vehicle on Michigan’s public roads and highways to file a claim for a refund of the taxes paid. See MCL 207.112(2); MSA 7.302(2). Plaintiff submits that the gasoline sold at its facility was “exclusively used for a purpose other than the operation of a motor vehicle” on Michigan’s public roads and highways. This conclusion is not supported by the stipulated facts. Although plaintiff’s customers must leave Michigan over private roads when they leave plaintiff’s facility, it is certainly conceivable that some of those same customers might later reenter Michigan and drive on public roads and highways while still using gasoline purchased from plaintiff. Accordingly, the Court of Claims was correct when it observed that only the end-users of gasoline purchased at plaintiff’s facility were in a position to know the amount of gasoline used for a purpose other than the operation of a motor vehicle on Michigan’s public roads and highways. Because the stipulated facts do not show that the gasoline at issue was used for a purpose other than the operation of a motor vehicle on Michigan’s public roads and highways, plaintiff is not entitled to relief under MCL 207.112(2); MSA 7.302(2).
 
 [3]
 

 Affirmed.
 

 [1]
 

 Although the California sales tax at issue in
 
 Richfield Oil
 
 was a privilege tax imposed on the
 
 sale
 
 of the oil, the Supreme Court has explained that the tax on the sale of an article is effectively a tax on the article itself. See
 
 Richfield Oil, supra
 
 at 84, quoting
 
 Brown v Maryland,
 
 25 US (12 Wheat) 419, 444; 6 L Ed 678 (1827).
 

 [2]
 

 The parties stipulated that all goods sold by plaintiff to its customers “must be exported from the United States.” To the extent that this stipulation could be understood as a stipulation regarding the
 
 legal
 
 meaning of the word “export,” it is not binding on this Court. It is well settled that a stipulation by the parties regarding a matter of law is not binding on a court.
 
 In re Finlay Estate,
 
 430 Mich 590, 595; 424 NW2d 272 (1988).
 

 [3]
 

 Given the stipulated facts in this case, we need not determine whether plaintiff or any other retailer could ever qualify as a “purchaser” for purposes of MCL 207.112(2); MSA 7.302(2).