AMMEX, INC v DEPARTMENT OF TREASURY

Docket No. 269237. Submitted September 11, 2007, at Lansing. Decided October 16, 2007, at 9:00 a.m. Leave to appeal sought.

Ammex, Inc., brought an action in the Court of Claims against the Department of Treasury, seeking a refund of taxes on gasoline and diesel fuel it paid in 1997 and 1998. Ammex operates a duty-free store beyond the point of no return for travelers to Canada on the Ambassador Bridge and sold the fuel to persons who had left the United States and were required to enter Canada. The taxes were paid under the former motor fuel tax act, former MCL 207.101 *et seq*. The court, Paula J. Manderfield, J., held that the act was unconstitutional under the Commerce Clause and the Supremacy Clause and ordered a refund. The department appealed.

The Court of Appeals *held*:

Ammex is entitled to a refund for the reasons articulated in *Ammex, Inc v Dep't of Treasury*, 272 Mich App 486 (2006), which held that the federal regulatory scheme governing customs bonded warehouses, such as Ammex's class 9 duty-free store, prohibits the application of the motor fuel tax and the state sales tax to those bonded warehouses. While the department argued that Ammex was not permitted by the customs service to sell fuel duty-free during the periods at issue, that argument is untenable in light of the United States Court of International Trade's ruling in *Ammex, Inc, v United States*, 24 Ct Int'l Trade 851 (2000), that the customs service's position was contrary to the plain language of 19 USC 1557(a)(1), which allows the duty-free sale of fuel. Moreover, the department stipulated in this case that Ammex sold the fuel duty-free and subject to a customs bond.

Affirmed.

*Dykema Gossett PLLC* (by *Craig L. John* and *Thomas J. Murray*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Michael R. Bell*, Assistant Attorney General, for the defendant.

Before: MARKEY, P.J., and SAAD and WILDER, JJ.

SAAD, J. The Michigan Department of Treasury appeals the Court of Claims ruling that Ammex, Inc., is entitled to a refund of taxes it paid under the former Michigan motor fuel tax act (MFTA)[1] during the tax periods of July 1, 1997, to December 31, 1997, and April 1, 1998, to June 30, 1998. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Ammex operates a Class 9 United States customs bonded warehouse, or "duty-free store," in Detroit, near the entrance to the Ambassador Bridge to Canada.[2] The store is located "beyond the point of no return"[3] for travelers, which means that all persons entering the facility must then depart from the United States and enter Canada. For this reason, the Ammex complex is designated as "sterile" by the United States Customs Service.[4] The property on which the store is located is privately owned, and the surrounding streets and the Ambassador Bridge are also privately owned.

---

[1] MCL 207.101 *et seq.*, repealed by 2000 PA 403.

[2] "Under federal law, a customs bonded warehouse is a building where imported goods may be stored, be manipulated, or undergo manufacture duty-free for a specific period. 19 USC 1555; 19 USC 1557." *Ammex, Inc v Dep't of Treasury*, 272 Mich App 486, 488 n 2; 726 NW2d 755 (2006).

[3] The phrase "beyond the point of no return" was used in the same context in both *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 627; 732 NW2d 116 (2007), and *Ammex, Inc v United States*, 334 F3d 1052, 1054 (CA Fed, 2003), and refers to the exit point from the United States, which is "the area in close proximity to an actual exit for departing from the customs territory . . . ." 19 USC 1555(b)(8)(F).

[4] As this Court observed in *Ammex*, 273 Mich App at 628 n 8, quoting *Ammex*, 334 F3d at 1054: " 'The designation "sterile" indicates that the physical design and operation of the facility guarantees the exportation of products sold therein.' "

Among many items sold duty-free, Ammex sold gasoline and diesel fuel at its facility during the relevant tax periods. Pursuant to the MFTA, Ammex paid the "gas" tax to its supplier when Ammex purchased the fuel. According to Ammex, it should have been allowed to sell fuel free of Michigan's tax because the MFTA violated the Commerce Clause and Supremacy Clause of the United States Constitution and Ammex's fuel sales fell within the nonhighway use exemption of the MFTA, former MCL 207.112(2). Moreover, Ammex claims that it did not pass on the MFTA tax to its customers, as it was permitted to do, and, therefore, that it should receive a refund for shouldering the economic burden of the tax. The Department of Treasury refused to refund the taxes, and, in 1998, Ammex filed two complaints for the 1997 and 1998 tax periods, and the Court of Claims consolidated the cases for trial. The parties stipulated that Ammex was taxed $706,561 during the two tax periods at issue.

Following a bench trial, the Court of Claims ruled that Ammex is entitled to a refund from the Department of Treasury for taxes paid during the relevant periods because the MFTA was unconstitutional as applied under the Commerce Clause and Supremacy Clause of the United States Constitution. The court further ruled that, were it to hold that the tax was constitutional, Ammex would nonetheless be entitled to a refund under the nonhighway use exemption of the MFTA.

## II. ANALYSIS

We hold that Ammex is entitled to a refund of the taxes it paid under the MFTA for the reasons articulated by this Court in *Ammex, Inc v Dep't of Treasury*,

272 Mich App 486; 726 NW2d 755 (2006) (*Ammex II*).[5] In *Ammex II*, Ammex requested a refund for taxes paid pursuant to the MFTA and the General Sales Tax Act for the tax period of January 1, 2001, through March 31, 2001. *Id.* at 487. In *Ammex II*, Ammex, as here, prepaid the taxes to its suppliers when it purchased the fuel for delivery to its duty-free facility. *Id.* at 489. The Court of Claims ruled that the application of the MFTA was preempted under the Supremacy Clause, US Const, art VI, cl 2, because of "the federal government's extensive statutory and regulatory scheme governing customs bonded warehouses." *Id.* at 496. This Court agreed that " 'the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress[.]' " *Id.* at 505, quoting *Lavene v Winnebago Industries*, 266 Mich App 470, 478; 702 NW2d 652 (2005). According to the *Ammex II* Court, "[t]he federal customs warehouse scheme is 'pervasive' and 'provides for continual federal supervision of warehouses, strict bonding requirements, and special taxing rules . . . .' " *Ammex II,* 272 Mich App at 497, quoting *Itel Containers Int'l Corp v Huddleston,* 507 US 60, 71; 113 S Ct 1095; 122 L Ed 2d 421 (1993).

The Court explained in detail the comprehensive regulatory scheme Congress enacted for customs bonded warehouses, including that duty-free goods may be stored only for prescribed periods, that the goods are in the joint custody of the United States Customs Service and the warehouse owner, and that, if the goods are stored for a longer time or removed from the

---

[5] We refer to this opinion as "*Ammex II*" because this Court issued an earlier opinion that involved the same parties and also involved a fuel-tax refund, *Ammex, Inc v Dep't of Treasury*, 237 Mich App 455; 603 NW2d 308 (1999). Because we hold that this case is controlled by the reasoning in *Ammex II*, we need not set forth the facts or this Court's rationale in the earlier case.

warehouse, a duty must be paid. *Ammex II,* 272 Mich App at 497-498. The Court further reasoned that a duty-free store must ensure that merchandise will be exported and must inform customers that the merchandise is subject to the laws of the foreign country to which it is taken and is not subject to federal tax unless it is brought back into this country. *Id.* at 498-499. The Court also observed that Congress added additional regulations to the customs bonded warehouse system in 1988. *Id.* at 499.

For these reasons, the Court noted that "[t]he United States Supreme Court has specifically recognized that the federal regulatory scheme governing customs bonded warehouses preempts most state taxes on goods stored in such warehouses." *Id.* at 500. Relying on *McGoldrick v Gulf Oil Corp,* 309 US 414; 60 S Ct 664; 84 L Ed 840 (1940), and *Xerox Corp v Harris Co,* 459 US 145; 103 S Ct 523; 74 L Ed 2d 323 (1982), the Court ruled that "the state motor fuel tax and the state sales tax are preempted by the comprehensive federal regulation of customs bonded warehouses because 'the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress[.]' " *Ammex II,* 272 Mich App at 505, quoting *Lavene,* 266 Mich App at 478. The Court further explained:

> As recognized in *McGoldrick* and *Xerox,* the federal regulatory scheme for customs bonded warehouses evinces a congressional intent "to benefit American industry by remitting duties otherwise due." *Xerox, supra* at 153. The remission of import taxes on motor fuel benefited American industry by remitting duties otherwise due on gasoline and diesel fuel. Furthermore, the system of customs regulation is equally pervasive for the stored goods in the present case as it was in *McGoldrick* and *Xerox. Id.* As in *McGoldrick* and *Xerox,* the motor fuel was segregated in a Class 9 customs bonded warehouse "from the mass of goods

within the state." *McGoldrick, supra* at 428-429. Furthermore, the gasoline, diesel fuel, and other merchandise sold at plaintiff's duty-free store at the Ambassador Bridge were under the continuous control and supervision of the United States Customs Service from the time they entered the bonded warehouse until they were sold as duty-free merchandise to consumers leaving the country. Finally, the amounts of state sales tax and motor fuel tax were "large enough . . . to offset substantially the very benefits Congress intended to confer by remitting the duty." *Xerox, supra* at 153. [*Ammex II,* 272 Mich App at 505-506.]

The Department of Treasury contends that *Ammex II* is not controlling because, during the tax years at issue here, 1997 and 1998, the United States Customs Service had not permitted Ammex to sell duty-free gasoline and diesel fuel at its facility. On August 25, 2000, the United States Court of International Trade (CIT) issued an opinion in which it held that the customs service's refusal was contrary to 19 USC 1557(a)(1), which, by its plain language, would permit motor fuel to be sold as duty-free merchandise. *Ammex, Inc v United States,* 24 Ct Int'l Trade 851; 116 F Supp 2d 1269 (2000).[6] Yet the Department of Treasury maintains that the CIT decision cannot apply retroactively and cannot be read to relieve Ammex from the MFTA tax. We hold that the department's position is untenable in light of the reasoning of the CIT and its legal conclusions.

---

[6] After the ruling, the customs service permitted Ammex to sell duty-free fuel for a time, but then revoked its duty-free status. The United States Court of International Trade in, *Ammex, Inc v United States,* 27 Ct Int'l Trade 1677; 288 F Supp 2d 1375 (2003), ruled that the customs service had wrongfully revoked its permission for Ammex to sell fuel as duty-free merchandise. The United States Court of Appeals for the Federal Circuit upheld this ruling by the CIT in a related case. *Ammex, Inc v United States,* 419 F3d 1342 (CA Fed, 2005).

In the CIT decision, Ammex specifically challenged a customs service ruling that Class 9 bonded warehouses could not sell duty-free gasoline or diesel fuel on a retail basis. *Id.* at 851. According to Ammex, the ruling violated 19 USC 1557(a)(1), "which allows '[a]ny merchandise subject to duty, with the exception of perishable articles and explosive substances' to be entered and withdrawn (for exportation) from bonded warehouses, such as duty-free stores." *Id.* at 853. In analyzing the issues, the court explained:

> In this case, 19 U.S.C. § 1557(a)(1) (1994), as well as the other provisions covering duty-free stores and bonded warehouses, make clear the scope of merchandise that may be entered and withdrawn from duty-free enterprises. In relevant part, § 1557(a)(1) provides that
>
> "*Any merchandise subject to duty, with the exception of perishable articles and explosive substances* other than firecrackers, *may be entered for warehousing and be deposited in a bonded warehouse* at the expense and risk of the owner [,] purchaser, importer, or consignee. Such merchandise may be withdrawn, at any time within 5 years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or *may be withdrawn for exportation or for transportation and exportation to a foreign country . . . .*" (emphasis added).
>
> On its face, the plain language of § 1557(a)(1) shows Congress' intent that there be only two restrictions on the type of dutiable merchandise that may be stored or withdrawn from a bonded warehouse: (1) perishable articles and (2) explosive substances other than firecrackers. Customs did not find that diesel fuel and gasoline fall within either of these exceptions. Accordingly, since duty-free stores are a type of bonded warehouse, the plain language of § 1557(a)(1) makes both items eligible for sale from duty-free stores. [*Id.* at 854-855.]

The CIT also rejected the United States Department of Treasury's argument that 19 USC 1555(b)(3)(D) and (E) further limit the goods that may be sold at duty-free stores to those that are "individual items of merchandise that are capable of being individually marked." *Id.* at 855 (emphasis removed).[7] The court explained that neither section suggests a Congressional intent to define what kind of merchandise may be sold duty-free, and it therefore concluded:

> Accordingly, because there is no conflict between 19 U.S.C. § 1557(a)(1) (1994) and the specific provisions under 19 U.S.C. § 1555(b) (1994) for duty-free enterprises, § 1557(a)(1) is dispositive of Plaintiff's claim. In view of § 1557(a)(1)'s instruction that "[a]ny merchandise subject to duty" may be entered and withdrawn from a bonded warehouse, the court finds that Customs violated this provision in promulgating HQ 227385 [the customs service's ruling]. Section 1557(a)(1) provides that all types of dutiable merchandise may be sold from bonded warehouses, including duty-free stores, and it was error for the government to read into 19 U.S.C. § 1555(b)(3)(D) and (E) an exception beyond those specifically stated in § 1557(a)(1). [*Id.* at 856].

Thus, according to the CIT, during 1997 and 1998, the customs service's policy of taxing the fuel under federal

---

[7] Section 1555(b)(3) provides:

(3) Each duty-free sales enterprise—

\* \* \*

(D) shall not be required to mark or otherwise place a distinguishing identifier on individual items of merchandise to indicate that the items were sold by a duty-free sales enterprise, unless the Secretary finds a pattern in which such items are being brought back into the customs territory without declaration;

(E) may unpack merchandise into saleable units after it has been entered for warehouse and placed in a duty-free sales enterprise, without requirement of further permits . . . [.]

law was wrong because it is contrary to the plain language of the federal statute.[8] Indeed, the CIT ruled that the customs service "acted *unlawfully* in prohibiting Ammex from selling duty-free gasoline and diesel fuel . . . ." *Id.* at 857 (emphasis added). We hold that the CIT decision must be given retrospective application. The CIT merely applied 19 USC 1557(a)(1) as written and did not announce a new rule of law. *Lindsey v Harper Hosp*, 455 Mich 56, 68-69; 564 NW2d 861 (1997). Therefore, pursuant to the CIT holding, the customs service unlawfully denied Ammex's requests to sell duty-free fuel during 1997 and 1998.

Moreover, the Department of Treasury specifically stipulated in this case that "Ammex sold all gasoline and diesel fuel duty free to its customers during the tax periods at issue" and that the

> motor fuel, like all other articles sold by Ammex (e.g., liquor, cigarettes) from within Ammex's facility, was handled by Ammex in the same manner as its other products, which were subject to a U.S. Customs bond, which assures payment of applicable federal taxes and duties in the event that the goods are not exported within the five year time limit provided by federal statute.

Thus, notwithstanding the unlawful federal taxation, the Department of Treasury agrees that Ammex actu-

---

[8] The Department of Treasury maintains that the United States Court of International Trade's ruling in 2000 is not controlling on the issue of Ammex's ability to sell duty-free fuel in 1997 and 1998 because Ammex did not ask to sell duty-free fuel until 2000. However, the CIT opinion reflects that the United States Customs Service decided in both 1994 and 1998 that duty-free stores were not permitted to sell gasoline or diesel fuel as duty-free merchandise. *Ammex,* 24 Ct Int'l Trade at 851-852. Ammex filed the CIT action in response to the ruling from customs headquarters. *Id.* at 852. Thus, we reject the Department of Treasury's argument.

ally sold the fuel as duty-free merchandise and acknowledges that Ammex handled the fuel as duty-free merchandise.

For these reasons, we hold that, pursuant to this Court's holding in *Ammex II*, the United States Court of International Trade's holding in *Ammex, Inc v United States*, and the Department of Treasury's stipulations, Ammex is entitled to a refund of the taxes it paid under the MFTA. Application of the MFTA to Ammex's sale of motor fuel is preempted by the federal scheme governing customs bonded warehouses. Accordingly, we affirm the Court of Claims.[9]

Affirmed.

---

[9] Because our holding is dispositive of Ammex's claim, we need not address the other issues raised in the appeal or the question whether Ammex's fuel sales fall under the nonhighway use exemption of the MFTA.