# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## ANDRIE INC v DEPARTMENT OF TREASURY

Docket No. 145557. Argued November 6, 2013 (Calendar No. 1). Decided June 23, 2014.

Andrie Inc. brought an action in the Court of Claims, seeking a refund of use taxes it had paid under protest for the years 1999 through 2006 after an audit by the Department of Treasury determined that Andrie had understated the taxes it owed for that period under the Use Tax Act (UTA), MCL 205.91 *et seq.*, by $398,755. To arrive at this amount, the department's auditor had reviewed Andrie's purchases of fuel and other tangible items, some of which Andrie had purchased in Michigan from Michigan sellers, for use in its business of shipping asphalt and other products across the Great Lakes. The auditor requested that Andrie provide proof that sales tax due under the General Sales Tax Act (GTSA), MCL 205.51 *et seq.*, was paid, either by Andrie or the retail seller, on items that were determined to be subject to use tax, applying the exemption in MCL 205.94(1)(a) if Andrie did so and assessing Andrie use tax for those items if not. The department ultimately imposed use tax on fuel and supply purchases Andrie made in Michigan, from Michigan-based retail sellers, if the invoice did not list sales tax as a separate line item and establish that sales tax had been paid. Andrie filed suit in the Court of Claims, arguing that it was entitled to rely on an alleged requirement of the GSTA that the sales tax be included in the price of the goods purchased regardless of whether the sales tax was separately stated. The Court of Claims, Paula J. M. Manderfield, J., held that Andrie was entitled to a partial refund of use tax for those purchases that were subject to sales tax, reasoning that because Andrie was entitled to a presumption that sales tax was included in the price of goods purchased, Andrie was not required to provide proof that the retail sellers had remitted sales tax to the department. The department appealed. The Court of Appeals, FITZGERALD, P.J., and WILDER and MURRAY, JJ., affirmed on this issue, holding that because the retailer was responsible for paying sales tax, it was erroneous to place a duty on the purchaser to show that the sales tax had been paid. 296 Mich App 355 (2012). The Supreme Court granted the department's motion to stay the precedential effect of the Court of Appeals opinion and also granted the department's application for leave to appeal. 493 Mich 900 (2012).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, KELLY, MCCORMACK, and VIVIANO, the Supreme Court *held*:

In order to be entitled to the exemption from the use tax found in MCL 205.94(1)(a), one must show that the sales tax was both due and paid on the sale of that tangible personal property. The burden of demonstrating entitlement to the use tax exemption rested on the taxpayer seeking

it.  Because Andrie did not submit any evidence that sales tax had been paid, Andrie was not entitled to the use tax exemption.  The Court of Appeals judgment was reversed to the extent it held that the use tax could never be levied on property if the purchase of that property was subject to sales tax.

1.  The use and sales taxes are complementary and supplementary, and their potential applications are not mutually exclusive.  The UTA imposes a 6% tax on the use, storage, and consumption of all tangible personal property in Michigan, while the GSTA imposes a 6% tax on the sale of all tangible personal property in Michigan.  Absent an exception, tangible personal property sold and used in Michigan is subject to both use and sales tax.  The text of each taxing statute indicates that they may be levied on the same property, as long as the respective predicate taxable events have taken place.  The legal responsibility for the use tax falls solely on the consumer, while the legal responsibility for the sales tax falls on the retail seller.  The retail seller is authorized to pass the economic burden of the sales tax by collecting the tax at the point of sale from the consumer, but whether the consumer remits sales tax to the retail seller or the seller pays the sales tax from another source, the seller is responsible for remitting the sales tax to the department.  Under MCL 205.94(1)(a), property sold in Michigan on which tax was paid under the GSTA is exempt from use tax if the tax was due and paid on the retail sale to a consumer.  This provision unambiguously requires payment of the sales tax before the exemption applies.  Therefore, the department properly assessed use tax on those in-state purchases for which Andrie failed to submit evidence that sales tax was actually paid at the time of sale.

2.  Taxpayers are not entitled to a presumption that sales tax was included in the prices paid to retailers when their receipts to do not list sales tax as a separate line item.  A taxpayer is entitled to the use tax exemption in MCL 205.94(1)(a) when it proves that it paid sales tax to the retail seller, even if the retail seller, who bears the legal responsibility for payment of the sales tax, did not remit the tax to the department.  However, a purchaser was not entitled to a presumption that it paid the sales tax at the point of sale.  The burden of proving entitlement to an exemption rests on the party asserting the right to the exemption, and a presumption of sales tax payment would shift this burden to the department.  Furthermore, a presumption that sales tax is always included in an item's purchase price would effectively entitle a purchaser to the exemption whenever sales tax is merely due without having to satisfy its burden to show the tax was paid, which would render superfluous the requirement in MCL 205.94(1)(a) that sales tax be both due and paid.  Because Andrie submitted no evidence that it paid sales tax to the retail seller, or that the seller remitted sales tax to the department on that sale, it did not meet its burden, and it was not entitled to the exemption.

3.  MCL 205.73(1), which states that a retail seller may not state or imply that an item's purchase price does not include sales tax, did not relieve Andrie of its duty to prove that sales tax was paid.  MCL 205.73(1), as an advertising statute, was only a restriction on retail sellers' representations to the public; it did not purport to define the actual components of an item's purchase price.

Court of Appeals judgment reversed in part.

Justice CAVANAGH concurred in the result only.

Justice ZAHRA, dissenting, stated that because MCL 205.52(1) places the burden of paying sales tax only on retailers and not on consumers, the Court should have afforded consumers a presumption that retailers had actually paid sales tax if it was evident that sales tax was due under the statute. He would have permitted the state to rebut this presumption by producing evidence that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption was rebutted, the burden would return to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED June 23, 2014

STATE OF MICHIGAN

SUPREME COURT

ANDRIE INC,

       Plaintiff-Appellee,

v                                                    No. 145557

DEPARTMENT OF TREASURY,

       Defendant-Appellant.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

Michigan's Use Tax Act (UTA)[1] imposes a 6% tax on a consumer's use, storage, and consumption of all tangible personal property in Michigan.[2] The UTA exempts the use of property from imposition of the use tax when "the [sales] tax was due and paid on

---

[1] MCL 205.91 *et seq*.

[2] MCL 205.93(1). For purposes of this opinion, the use, storage, or consumption of tangible personal property are collectively referred to as "use" of the property.

the retail sale to a consumer."[3]   Concurrently, Michigan's General Sales Tax Act[4] (GSTA) imposes a 6% tax on a retailer's gross proceeds, to be remitted by the retailer to the Department of Treasury (the department).[5]   At issue before this Court is whether a purchaser and user of tangible personal property may avail itself of the use tax exemption when it is unable to prove payment of sales tax, either by itself to the retail seller at the point of sale or by the retail seller to the department.

The burden of proving entitlement to the exemption rests on the party asserting the right to the exemption.[6]   Under the plain language of the use tax exemption, MCL 205.94(1)(a), we hold that when the retail seller does not admit that sales tax was collected or paid on a particular sale of tangible personal property, the user of that property must show that it paid sales tax on the purchase of that property before the user can claim an exemption from the use tax.   Accordingly, we reverse the portion of the Court of Appeals' decision that held that the use tax can never be levied on property if the purchase of that property was merely subject to sales tax.

---

[3] MCL 205.94(1)(a).

[4] MCL 205.51 *et seq*.

[5] "[T]here is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act."  MCL 205.52(1).

[6] *Elias Bros Restaurant v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837 (1996).

FACTS AND PROCEDURAL HISTORY

Plaintiff Andrie Inc. is a Michigan corporation engaged in marine construction and transportation. Andrie's marine transportation division transports asphalt and other products throughout the Great Lakes to customers in the Midwest and Canada using tugboats and barges. Andrie purchases fuel and other supplies for its business, some of which are purchased in Michigan from Michigan sellers.

The department conducted a use tax audit of Andrie covering November 1, 1999, through July 31, 2006. The department's auditor reviewed Andrie's purchases of tangible items, including the in-state fuel and supply purchases. Where the auditor determined an item was subject to use tax, the auditor requested that Andrie provide proof that sales tax was paid. If Andrie produced a receipt showing that it had paid sales tax to the retail seller, the department applied the exemption in MCL 205.94(1)(a) and did not assess use tax. But if Andrie could not prove that sales tax had been paid, either by itself or the retail seller, the department assessed Andrie the use tax for that property.

The department ultimately imposed use tax on fuel and supply purchases Andrie made in Michigan, from Michigan-based retail sellers, where the invoice did not list sales tax as a separate line item, i.e., where Andrie was unable to prove that sales tax had been paid on those transactions as required by MCL 205.94(1)(a). Notably, the department concedes that it is unaware whether any of these Michigan retail sellers had, in fact, remitted sales tax to the department.

As a result of the audit, the department determined that Andrie understated its use tax in the amount of $398,755.00. Andrie paid the assessments under protest and filed suit in the Court of Claims. In its complaint, Andrie alleges that it was entitled to rely on

3

an alleged requirement of the GSTA that the sales tax be included in the price of the goods purchased regardless of whether the sales tax was separately stated.

The Court of Claims held that Andrie was entitled to a partial refund of use tax for those purchases that were subject to sales tax. That court reasoned that Andrie was entitled to a presumption that sales tax is included in the price of goods purchased, and therefore Andrie did not have the obligation to provide proof that the retail sellers remitted sales tax to the department. The department appealed. The Court of Appeals affirmed on this issue, holding that "the mere fact that a transaction is subject to sales tax necessarily means that the transaction is not subject to use tax."[7] It further stated that, "[b]ecause the retailer has the ultimate responsibility to pay any sales tax, it is erroneous to place a duty on the purchaser to show that the sales tax was indeed paid to the state. Thus, the transactions are not subject to use tax, and the trial court properly held in favor of plaintiff on this issue."[8]

## STANDARD OF REVIEW

Statutory interpretation is a question of law that we review de novo.[9] When interpreting a statute, courts must "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute."[10] This requires us to consider "the

---

[7] *Andrie, Inc v Dep't of Treasury*, 296 Mich App 355, 372; 819 NW2d 920 (2012).

[8] *Id.* (Citation omitted.)

[9] *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 383; 617 NW2d 310 (2000).

[10] *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

4

plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' "[11]

## DISCUSSION

As a preliminary matter, we note that the use and sales taxes are complementary and supplementary.[12] Contrary to the Court of Appeals' conclusion, their potential applications are not mutually exclusive.[13] The two taxing statutes relate to entirely separate taxable events: the use and the sale of tangible personal property. The UTA imposes a 6% tax on the use, storage, and consumption of all tangible personal property in Michigan:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property or services specified in section 3a or 3b.[14]

Meanwhile, the GSTA imposes a 6% tax on the sale of all tangible personal property in Michigan:

---

[11] *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1996), quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[12] See *Elias Bros*, 452 Mich at 153.

[13] In reaching its conclusion, the Court of Appeals relied upon *Elias Bros*, 452 Mich at 146 n 1 ("The [UTA] . . . covers transactions not *subject to* the general sales tax.") (emphasis added). For reasons explained below, this was an inaccurate restatement of the plain language of the UTA and the GSTA, including MCL 205.94(1)(a). Indeed, *Elias Bros* later acknowledges that "the use tax provisions except property acquired in a transaction in this state on which a sales tax *has been paid* . . . ." *Id.* at 153 n 19 (emphasis added).

[14] MCL 205.93(1).

5

> [T]here is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act.[15]

Absent an exception, tangible personal property sold and used in Michigan is subject to *both* use and sales tax. It is plain to see from the text of each taxing statute that they are capable of being levied upon the same property, as long as the respective predicate taxable events (i.e., use and sale) take place.

Just as each tax is triggered by a separate taxable event, the legal responsibility for each tax falls upon a separate entity. The legal responsibility for the use tax falls solely on the consumer.[16] By contrast, the legal responsibility for the sales tax falls on the retail seller, with the tax being levied for the privilege of making sales at retail.[17] The retail seller is authorized—but not obligated—to pass the economic burden of the sales tax by collecting the tax at the point of sale from the consumer.[18] But whether the consumer remits sales tax to the retail seller or the seller pays the sales tax from another source, the seller is responsible for remitting the sales tax to the department, which tax is calculated as a percentage of the seller's gross proceeds in a taxable period.[19]

---

[15] MCL 205.52(1).

[16] *Terco, Inc v Dep't of Treasury*, 127 Mich App 220, 226, 339 NW2d 17 (1983).

[17] See MCL 205.52(1); *Ammex, Inc v Dep't of Treasury*, 237 Mich App 455, 460; 603 NW2d 308 (1999).

[18] *Ammex, Inc*, 237 Mich App at 460. See also MCL 205.73(1).

[19] See MCL 205.52(1). For reasons explained later in this opinion, the fact that a retail seller has a legal obligation to remit sales tax to the department does not mean that the

Although the use and sales taxes potentially apply to the same tangible personal property, a taxpayer otherwise subject to use tax is entitled to an exemption if it complies with any of the conditions delineated by MCL 205.94. One of these exemptions involves payment of the sales tax:

> (1) The following are exempt from the tax levied under this act . . . :

> (a) Property sold in this state on which transaction a tax is *paid* under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, if the tax was *due and paid* on the retail sale to a consumer.[20]

The exemption statute unambiguously requires payment of the sales tax before it exempts the taxpayer from the use tax. It is not enough that the sales tax was due on the retail sale of the property; rather, sales tax must be both "due *and* paid" before the exemption applies. Thus, the department properly assessed use tax on in-state purchases where Andrie failed to submit evidence that sales tax was actually paid at the time of sale.

Our conclusion that the terms of the use and sales taxes render them capable of being applied to the same property does no violence to the "targeted legislative effort to avoid double taxation."[21] Pursuant to MCL 205.94(1)(a), *payment* of the sales tax is mutually exclusive with payment of the use tax, but the same cannot be said of the potential *applicability* of the respective taxes to a given article of tangible personal property. In case law discussing double taxation, the threat of double taxation was a real

---

sales tax necessarily was paid on a retail sale to a purchaser under MCL 205.94(1)(a).

[20] MCL 205.94(1)(a) (emphasis added).

[21] See *Elias Bros*, 452 Mich at 152.

7

consequence of the department's position;[22] here, double taxation is at best a hypothetical reality, and at worst a straw man. The taxpayer, as the beneficiary of the exemption, has the tools to ensure that it is not double-taxed. It may, as part of its freedom to contract with retail sellers, demand proof at the point of sale that the sales tax was paid. Even if it misses that opportunity (which would be its responsibility alone), after the fact, the taxpayer can request an affidavit from the retailer averring that the tax was either collected at the point of sale or remitted to the department.[23] In short, any double taxation that could occur in this situation is traceable to the taxpayer's recordkeeping and not, as seen in other cases, the statutory scheme.

As an alternative to its argument that the use tax can never apply to property on which sales tax should be paid, Andrie asserts that it is entitled to a presumption that sales tax is included in the prices paid to retailers when its receipts to do not list sales tax as a separate line item. A taxpayer is entitled to the use tax exemption in

---

[22] For example, in *Elias Bros*, if the taxpayer was not given the benefit of the industrial processing exemption to the use tax, MCL 205.94(g), it was a certainty that the taxpayer would pay tax on the components used or consumed in the product's manufacture *and* on the end product it sold, contradicting the Legislature's purpose in enacting the industrial processing exemption. *Id.* In *World Book, Inc v Dep't of Treasury*, this Court addressed the very real risk of subjecting a taxpayer to multiple states' sales taxes by acknowledging that a retail sale can be consummated in only one state. 459 Mich 403, 411; 590 NW2d 293 (1999), citing *Oklahoma Tax Comm v Jefferson Lines, Inc*, 514 US 175, 186-87; 115 S Ct 1331; 131 L Ed 2d 261 (1995).

[23] This avenue to the exemption in MCL 205.94(1)(a) was conceded by the department at oral argument, and it is consistent with the text of the UTA and GSTA. Admittedly, such affidavit would come at the grace of the retailer.

MCL 205.94(1)(a) when it proves that it paid sales tax to the retail seller.[24] This is true even when the retail seller—who technically bears the legal responsibility for payment of the sales tax—does not remit the tax to the department.[25] However, we hold that a purchaser is not entitled to a presumption that it paid the sales tax at the point of sale. The burden of proving entitlement to an exemption rests on the party asserting the right to the exemption.[26] A presumption of sales tax payment would shift this burden to the department, contrary to established law regarding tax exemptions. At the very least, a purchaser-taxpayer must show that it paid tax to the retail seller, or that the seller remitted the sales tax to the department. Andrie submitted no evidence that it paid sales tax to the retail seller, or that the seller remitted sales tax to the department on that sale. As a result, it did not meet its burden, and it is not entitled to the exemption.

Furthermore, in conjunction with the fact that Andrie bears the burden to demonstrate its entitlement to a tax exemption, a presumption that sales tax is always included in an item's purchase price would violate established canons of statutory interpretation. A statute's words should not be ignored, treated as surplusage, or rendered

---

[24] *Combustion Engineering v Dep't of Treasury*, 216 Mich App 465; 549 NW2d 364 (1996).

[25] *Id.*

[26] *Elias Bros*, 452 Mich at 150. "Exemption from taxation effects the unequal removal of the burden generally placed on all [taxpayers] to share in the support of . . . government." *Michigan Baptist Homes & Dev Co v City of Ann Arbor*, 396 Mich 660, 669-70; 242 NW2d 749 (1976). For that reason, "exemption is the antithesis of tax equality," *id.*, which justifies placing the burden of showing entitlement to an exemption on the taxpayer.

9

nugatory.[27]  MCL 205.94(1)(a) requires that sales tax be both "due and paid" before property is exempted from the use tax.  A presumption that a purchaser paid the sales tax would, in effect, entitle a purchaser to the exemption whenever sales tax is merely due without having to satisfy its burden to show the tax was paid.  This would render superfluous the plain language of the requirement in MCL 205.94(1)(a) that sales tax be both "due *and paid*."  The plain language of the use tax exemption precludes a presumption that sales tax is always paid.

Andrie grounds its statutory argument for a presumption of sales tax payment in MCL 205.73(1),[28] which states:

---

[27] *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002).

[28] Andrie also argues that the department's assessments of use tax were unconstitutional, citing *Lockwood v Nims*, 357 Mich 517; 98 NW2d 753 (1959), which rightly held that a former version of the UTA ran afoul of a constitutional ceiling on sales tax.  When *Lockwood* was before this Court, the Michigan Constitution then stated that "at no time shall the legislature levy a sales tax of more than 3%."  Const 1908, art 10, § 23. Meanwhile, the Legislature enacted a use tax that purported to be levied upon the user; however, via a complicated statutory scheme, the use tax was necessarily collected by the retail seller at the point of sale.  See 1937 PA 94, as amended by 1959 PA 263, § 5. Effectively, consumers were paying 1% more than the sales tax ceiling.  This Court held *that* use tax structure to be an impermissible end run around the constitutional sales tax ceiling, and it invalidated that use tax statute.  *Lockwood* does not hold that any use tax necessarily conflicts with a constitutional ceiling on sales tax.  Rather, it holds that what is for all intents and purposes a sales tax may not circumvent a sales tax ceiling simply by wearing a "use tax" nametag.

Today, responsibility for payment of sales and use taxes is separated, falling upon the retail seller and the user, respectively.  Further, if payment of sales tax is proved, MCL 205.94(1)(a) prevents taxation under the use tax, whereas the statute overturned in *Lockwood* required payment of use tax without exception.  Finally, while today's Constitution still establishes a ceiling on sales tax percentages, the very same section discusses limitations on the use tax, foreclosing any claim that use and sales taxes cannot coexist.  See Const 1963, art 9, § 8.

A person engaged in the business of selling tangible personal property at retail shall not advertise or hold out to the public in any manner, directly or indirectly, that the tax imposed under this act is not considered as an element in the price to the consumer. This act does not prohibit any taxpayer from reimbursing himself or herself by adding to the sale price any tax levied by this act.

In other words, MCL 205.73(1) states that a retail seller may not *state or imply* that an item's purchase price does not include sales tax, either as a separate line item or otherwise. Although this restriction on retail sellers' representations is certainly consistent with Andrie's proposed presumption that sales tax is always included in an item's purchase price, it does not compel this Court to recognize such a presumption. MCL 205.73(1) is an advertising statute; its terms do not extend beyond a restriction on retail sellers' representations to the public.[29] The statute does not purport to define the actual components of an item's purchase price. Thus, MCL 205.73(1) does not relieve Andrie of its duty to prove that sales tax was paid.

In addition to its overbroad reading of the statutory text, Andrie's argument—that MCL 205.73(1) creates a presumption that sales tax is always included in an item's purchase price—is premised on the faulty assumption that a retail seller must *exclusively* use sales revenue to pay its sales tax liability. Were that the case, Andrie might have a point that a purchaser necessarily pays the sales tax at the point of sale; otherwise, the

_____

[29] For instance, the department enforced MCL 205.73(1) in a 1970 Letter Ruling, admonishing a retail seller for publishing a coupon stating that "no sales tax" would be levied on the sale of cigarettes. Therein, the department stated, "*It is quite true that you may not charge sales tax on cigarettes*, however, the sale of cigarettes must be included in your [taxable] gross proceeds." Letter Ruling 70-2 (May 22, 1970) (emphasis added), withdrawn by Revenue Admin Bull 2000-6. At that time, the GSTA applied to the retail sale of cigarettes.

11

retailer would be unable to remit any sales tax to the department. However, nothing in the GSTA prevents a retail seller from paying its sales tax liability from other sources. Under MCL 205.73(1), a retail seller is "not prohibited" from including sales tax in an item's price, but this leaves the retail seller the option to shoulder the sales tax burden itself. In that event, the retail seller may remit the tax from its gross proceeds or from another source entirely.[30] Because there is no statutory directive in MCL 205.73(1) directing a retail seller to include sales tax in the price it charges purchasers, the statute fails to establish a presumption that sales tax is always included in an item's purchase price.

This Court applied a nearly identically worded predecessor of MCL 205.73(1) in *Swain Lumber Co v Newman Dev Co*.[31] In that case, the plaintiff believed it was selling to a purchaser at wholesale (to which no sales tax applied), when in fact the nature of the purchaser's business meant that the sale was at retail (to which sales tax applied). After the transaction was complete, the nature of the purchaser's business was discovered, and

---

[30] Retail sellers could remit their sales taxes from, e.g., past years' reserves, liquidated assets, assets legally transferred from parent or subsidiary corporations, loans, etc. Further, as sometimes happens, a retailer may understate its sales tax liability or fail to remit the sales tax at all, in violation of its legal obligations under the GSTA.

[31] *Swain Lumber Co v Newman Dev Co*, 314 Mich 437, 441; 22 NW2d 891 (1946). That statute, as set forth in 1933 PA 167, § 23, stated:

> No person engaged in the business of tangible personal property at retail shall advertise or hold out to the public in any manner, directly or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this act shall be deemed to prohibit any taxpayer from reimbursing himself by adding to his sale price any tax levied hereunder.

the department assessed plaintiff the sales tax because the sale was at retail. Plaintiff unsuccessfully sued to recover sales tax from the purchaser. This Court stated:

> No presumption against [a purchaser] arises from the silence of [a purchaser] as to non-inclusion of sales tax in the price before or at the time of [the purchaser]'s paying the price demanded.
>
> * * *
>
> [MCL 205.73(1)] creates no liability on the part of the purchaser to pay the tax *unless the tax is incorporated in or added to the price and the purchaser accepts the tangible personal property with such understanding.*[32]

According to Andrie, *Swain Lumber* holds that, whenever sales tax is not listed on an invoice, the sales tax was incorporated into the retail price of the goods and thus paid by the purchaser. This is not accurate.[33] *Swain Lumber* merely reiterates that the legal responsibility for the sales tax falls on the retail seller: if a purchaser does not knowingly agree to pay the tax and the seller fails to include the tax in the sale price, a seller may not claw back a separate sales tax reimbursement at a later date. This conclusion allows for the possibility that sales tax is *not* incorporated into an item's sale price. Although a retail seller has a legal obligation to remit sales tax even if it does not affirmatively shift

---

[32] *Swain Lumber*, 314 Mich at 441 (emphasis added).

[33] In fact, the Michigan Tax Tribunal has rejected the interpretation of *Swain Lumber* offered by Andrie. In *Kruszka v Dep't of Treasury*, 4 MTT 520, 526-527 (Docket No. 88327), issued November 13, 1986, the taxpayer-purchasers claimed that a retail seller's mere obligation to remit sales tax absolved them of their use tax liability. The tribunal held that, while *Swain Lumber* and MCL 205.73(1) purport to address a *seller's* sales tax liability in a given situation, they do not offer guidance relative to a purchasers' use tax liability.

13

the tax burden to the purchaser, this does not mean that the tax necessarily was paid by the seller such that the use tax exemption in MCL 205.94(1)(a) applies.

## RESPONSE TO THE DISSENT

The dissent fails to defer to the rule of statutory construction precluding surplusage in interpreting the phrase "due *and paid*," and instead asks us to apply the use tax exemption whenever sales tax is merely due. To that end, the dissent would reverse the rule that we established unambiguously in *Elias Brothers*: that the burden to prove entitlement to a tax exemption rests upon the person claiming the exemption. But despite the dissent's contention, the consumer is not in need of a presumption that the sales tax was paid, because the consumer is able to prove his entitlement to the exemption in every case.

The dissent states that the consumer never pays the sales tax because the GSTA "places no duty on a consumer for the payment of the tax."[34] But the fact that a consumer has no *duty* to pay the tax does not mean that the consumer has no *ability* to establish that he is entitled to the exemption. This is supported by statute: MCL 205.73(1) permits the retailer-taxpayer to "reimburs[e] himself or herself by adding to the sale price *any tax levied* by [the GSTA]." Note that the statute does not merely permit

---

[34] Quoting *Combustion Engineering v Dep't of Treasury*, 216 Mich App 465, 469; 549 NW2d 364 (1996). The thrust of this argument is that, if the dissent is correct and consumer-taxpayers cannot pay the tax to the retailer themselves and thus be certain that they are entitled to the use tax exemption, the exemption is virtually unavailable to the consumer.

14

the taxpayer to charge the consumer the *value* of the tax—a relevant distinction according to the dissent. Rather, MCL 205.73(1) permits the retailer-taxpayer to include the sales tax itself: the retailer may add "tax" "to the sale price." Therefore, we respectfully disagree that a consumer cannot pay the sales tax for use tax exemption purposes simply because the retail seller is ultimately on the hook for remitting the tax to the department.

Accordingly, one can see that the consumer remains fully equipped to obtain the documentation necessary to later claim the exemption. With knowledge of its burden in mind,[35] at the point of sale the consumer can bargain for a receipt that shows the inclusion of sales tax in the purchase price. Alternatively, it may request an affidavit from the retail seller averring that sales tax was included in the sale price or remitted to the department. In either instance, the consumer shows that the sales tax was paid. It is that simple.

The dissent emphasizes recordkeeping requirements, i.e., retailers' mandate to record their sales tax information, as justification that consumers (who are not required to keep such records) are entitled to a presumption of sales tax payment. Recordkeeping requirements exist so that the *department* may confirm the tax liability of a taxpayer.[36] They do not exist to facilitate a taxpayer's claim of an exemption. Further, "exemptions

---

[35] *Adams Outdoor Advertising v East Lansing*, 463 Mich 17, 27 n 7; 614 NW2d 634 (2000) ("People are presumed to know the law.").

[36] See generally MCL 205.68; MCL 205.104a.

are the antithesis of tax equality."[37]  If a mandatory recordkeeping requirement existed in order to facilitate an exemption claim (rather than to facilitate taxation), it would promote exemptions and, in turn, tax inequality.  But that would run counter to the reasoning underlying the *Elias Brothers* rule.  Accordingly, recordkeeping requirements are not relevant in determining who has the duty to prove entitlement to an exemption.

Of course, the Legislature could have made it less burdensome for the consumer to avail itself of the use tax exemption.  However, under Michigan law, a burden exists, and under *Elias Brothers* that burden is shouldered by the person seeking a tax exemption.  Short of ignoring the statutory text of MCL 205.94(1)(a) (". . . and paid") or reversing *Elias Brothers*, the department must prevail in this matter.

CONCLUSION

In order to be entitled to the exemption from the use tax found in MCL 205.94(1)(a), one must show that the sales tax was both due and paid on the sale of that tangible personal property.  The burden of demonstrating entitlement to this tax exemption rests on the taxpayer seeking the exemption.  Accordingly, because Andrie has not submitted any evidence that sales tax was paid, Andrie has not carried its burden and is not entitled to the exemption delineated in MCL 205.94(1)(a).  We reverse that portion

---

[37] *Elias Bros*, 452 Mich at 150.

16

of the Court of Appeals' judgment which held that the use tax can never be levied on property if the purchase of that property was subject to sales tax.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Bridget M. McCormack
David F. Viviano

Justice CAVANAGH concurred in the result only.

STATE OF MICHIGAN

SUPREME COURT

ANDRIE INC,

       Plaintiff-Appellee,

v                                    No. 145557

DEPARTMENT OF TREASURY,

       Defendant-Appellant.

_____

ZAHRA, J. (*Dissenting*).

This case is about whether and when the Department of Treasury must afford consumers a rebuttable presumption that no use tax is due. The majority believes that consumers need only be afforded such a presumption when those consumers can prove either that the retailer actually remitted sales tax to the state or that the consumer paid to the retailer the value of the sales tax (an amount equal to the tax imposed on the retailer pursuant to MCL 205.52(1)). I disagree. MCL 205.52(1) only places the burden of paying sales tax on retailers; it does not impose a sales tax on consumers. In light of the fact that, as a matter of law, only the retailer must pay sales tax, this Court should afford consumers a presumption that the retailer actually paid sales tax if it is evident that sales tax was due under the statute. The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the

consumer was properly entitled to some other exemption. Applied to the present case, I would hold that the consumer is entitled to a presumption that the sales tax was paid. Having considered the record evidence, I would further conclude there was sufficient evidence to rebut this presumption. I would remand to the trial court for further proceedings consistent with this opinion.

## I. LAW

This case requires us to interpret the General Sales Tax Act (GSTA)[1] and the Use Tax Act (UTA).[2] When interpreting statutes, we first turn to the words of the statutes. The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent.[3] The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used.[4] An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the defined word or phrase is a "term of art" with a unique legal meaning.[5] A court may look beyond the words of a statute to ascertain legislative intent where the statutory language is ambiguous.[6] A statutory

---

[1] MCL 205.51 *et seq*.

[2] MCL 205.91 *et seq*.

[3] *People v Flick*, 487 Mich 1, 10; 790 NW2d 295 (2012).

[4] *Id*. at 10-11.

[5] *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007).

[6] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

provision is ambiguous only if it irreconcilably conflicts with another provision or is equally susceptible to two or more meanings.[7]

The GSTA and the UTA are "complementary and supplementary" statutes,[8] meaning that the provisions of one act are relevant to understanding the provisions of the other.[9] The two statutes are set up so that if Michigan sales tax was paid on an item, then a consumer is not liable for use tax.[10] The GSTA imposes a 6% tax on the sale of all tangible personal property in Michigan:

> [T]here is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act.[11]

Sales tax is not levied on all sales. It is only levied on sales by "persons engaged in the business of making sales at retail," and only then upon the transfer of "ownership

---

[7] See *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004).

[8] *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 153; 549 NW2d 837 (1996).

[9] *Id*. ("The provisions in the Sales Tax Act are relevant to use tax determinations because the sales and use tax provisions are complementary and supplementary. Both statutes contain a recognition . . . of the provisions and operation of the other.") (Quotation marks omitted.)

[10] See MCL 205.52(1) (defining the amount of sales tax and the sales to which it applies); MCL 205.54a (listing sales exempt from sales tax); MCL 205.93(1) (defining the use tax); MCL 205.94(1)(a) (exempting from use tax any property sold in Michigan on which sales tax is paid under the GSTA).

[11] MCL 205.52(1).

3

of tangible personal property . . . for consideration." Furthermore, this Court has held that sales tax is only levied on retail sales of personal property that are consummated in Michigan.[12]

Similarly, the UTA imposes a 6% tax on the use, storage, and consumption of all tangible personal property in Michigan:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property or services . . . .[13]

All consumers must therefore pay use tax unless their transaction is subject to a use tax exemption. There are a number of exemptions to the use tax,[14] the largest of which is the sales tax exception (STE). The STE exempts from use tax any "[p]roperty sold in this state on which transaction a tax is paid under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, if the tax was due and paid on the retail sale to a consumer."[15]

The majority interprets the STE as being satisfied if sales tax was either "due and paid" by the consumer to the retailer *or* by the retailer to the Treasury. In my view, this

---

[12] See *World Book, Inc v Treasury Dep't* , 459 Mich 403, 410-411; 590 NW2d 293 (1999).

[13] MCL 205.93(1).

[14] For example, in this case, Andrie originally claimed that it was entitled to the exemption in MCL 205.94(1)(j) for "fuel, provisions, supplies, maintenance, and repairs for the exclusive use of a vessel of 500 tons or more engaged in interstate commerce."

[15] MCL 205.94(1)(a).

4

is an improper interpretation of the statute. Consumers are not required to pay tax under the GSTA, and all taxes that are due are only paid to the state, not to retailers. Therefore, it is incorrect to say that consumers pay sales tax to retailers. While it is common for consumers to speak colloquially about paying sales tax on their purchases, consumers are really only paying the *value* of the sales tax to the retailer. The direct incidence of the sales tax falls on retailers alone.[16] The majority, in my view, erroneously relies on the language in MCL 205.73(1) for the proposition that the consumer may actually pay tax to a retailer. MCL 205.73(1) states:

> A person engaged in the business of selling tangible personal property at retail shall not advertise or hold out to the public in any manner, directly or indirectly, that the tax imposed under this act is not considered as an element in the price to the consumer. This act does not prohibit any taxpayer from reimbursing himself or herself by adding to the sale price any tax levied by this act.

The majority believes that this provision permits retailers to actually tax consumers by "adding . . . any tax levied by" the act to the sale price. Not so. As stated in the provision itself, this is a *reimbursement* for a tax that the retailer must pay to the state. It is not a tax on the consumer. Thus, when the STE requires that sales tax be paid, the only reasonable interpretation of this requires that the *retailer* owed the tax and paid it to the state. The statute says nothing about what consumers must pay because consumers

---

[16] MCL 205.52(1). See also *Combustion Engineering v Treasury Dep't*, 216 Mich App 465, 468-469; 549 NW2d 364 (1996) ("[T]he retailer has the ultimate responsibility for the payment of sales tax. The General Sales Tax Act places no duty on a consumer for the payment of the tax.").

5

are *only* required to pay use tax, never sales tax.[17]  Both taxes are due and remitted solely to the state.

This Court has understood the STE to be "an expression of a legislative intent to avoid pyramiding of sales and use tax."[18]  In other words, this Court reads MCL 205.52(1), MCL 205.93(1), and MCL 205.94(1)(a) as a scheme created to avoid double taxation on the same transaction.  This is because these three statutes, viewed as a whole, create a system that *completely exempts* consumers from liability for a 6% use tax if a 6% sales tax was paid by the retailer.[19]

In a series of attempts to respect the Legislature's intent not to double-tax transactions, this Court has created several presumptions to help retailers and consumers determine who must pay the 6% tax.  For example, in *World Book v Dep't of Treasury*, this Court chose to "lessen[ ] the danger of double taxation" by creating a presumption that "a sales transaction is subject to a sales, not a use, tax" when the transaction "was consummated within the state" since "[o]nly a transaction consummated within Michigan is a taxable 'sale at retail' " under the statute.[20]  This Court in *World Book* reasoned that such a presumption would clarify the transactions on which sales tax, as opposed to use

---

[17] See MCL 205.52(1) (providing that sales tax "shall be collected from all persons engaged in the business of making sales at retail," not from consumers, as it is a "tax for the privilege of engaging in that business").

[18] *Gen Motors Corp v Treasury Dep't*, 466 Mich 231, 237; 644 NW2d 734 (2002).

[19] But since the tax must be actually paid by the retailer, MCL 205.94(1)(a) leaves open the possibility that the Treasury can recover a use tax from the consumer on the occasion that the retailer breaks the law and fails to pay sales tax.

[20] *World Book*, 459 Mich at 410-411.

6

tax, was due.[21]  This Court held that sales tax was not due on an out-of-state transaction and that the purchasers were therefore required to pay use tax.[22]  The Court of Appeals employed a similar presumption in *Combustion Engineering v Dep't of Treasury*.[23]  The court held that a consumer who purchased an item from a retailer, the price of which reflected the value of the sales tax, was entitled to a presumption that it need not pay use tax on the item.[24]  The court in *Combustion Engineering* came to the conclusion that there was no statutory requirement that the consumer "prove that the [value of the] sales tax it paid to vendors was actually remitted to the state."[25]  This is because "the retailer has the ultimate responsibility for the payment of sales tax," and "[t]he General Sales Tax Act places no duty on a consumer for the payment of the [sales] tax."[26]

Another provision of the GSTA, MCL 205.73(1), makes it clear that retailers are solely responsible for paying sales tax and cannot mislead the consumer into believing that sales tax is not paid on a retail sale.  Specifically, MCL 205.73(1) prevents retailers from "advertis[ing] or hold[ing] out to the public in any manner, directly or indirectly,

---

[21] See *id*. at 408-409, 411, 413-418.

[22] *Id.*

[23] *Combustion Engineering*, 216 Mich App 465.

[24] *Id*. at 468.  The court in *Combustion Engineering* fell prey to the same incorrect colloquialism that the majority does: it referred to consumers *paying sales tax to retailers*.  As noted, taxes are only paid to the government, never to retailers.  The only thing remitted by the consumer to the retailer was the *value* of the sales tax.

[25] *Id*. at 469.

[26] *Id*. at 468-469.

that [sales tax] is not considered as an element in the price to the consumer." In *Swain Lumber Co v Newman Dev*,[27] this Court held that MCL 205.73(1) has the effect of placing the burden of paying sales tax on the retailer, even if the retailer mistakenly believed that it was entitled to an exemption. The bar in MCL 205.73(1) on retailers' "advertis[ing] or hold[ing] out . . . that [sales tax] is not considered as an element in the price to the consumer" therefore affects the parties' contract for the goods: in the absence of a contrary agreement, a retailer has impliedly promised to pay sales tax to the Treasury.[28]

Although there is no express provision addressing who must prove that a retailer paid sales tax, there are several provisions in the GSTA and the UTA that imply that the Legislature has placed that burden on retailers, not on nonretailer consumers. The recordkeeping requirement in the GSTA currently states:

> A person liable for any tax imposed under [the Sales Tax] Act shall keep . . . an accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires. If an exemption from the tax under this act is claimed by a person because the sale is for resale at retail, a record shall be kept of the sales tax license number if the person has a sales tax license. These records shall be retained for a period of 4 years after the tax imposed under this act to which the records apply is due or as otherwise provided by law.[29]

---

[27] *Swain Lumber Co v Newman Dev*, 314 Mich 437; 22 NW2d 891 (1946).

[28] *Id*. at 441.

[29] MCL 205.68(1). We note that this provision has been amended several times and renumbered since the period at issue in this case; however, those changes do not affect our analysis. See MCL 205.67 as amended by 1995 PA 255.

8

This provision requires only persons liable for sales tax (that is, retailers)[30] to "keep accurate and complete beginning and annual inventory and purchase records of . . . daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires."[31] Overall, the above provision, MCL 205.68(1), requires that these retailers retain sales tax records only "for a period of 4 years after the [sales tax] is due or as otherwise provided by law." Accordingly, MCL 205.68(1) creates a system under which retailers will have complete records of the transactions upon which they have and have not paid sales tax.

The UTA also includes a recordkeeping requirement, which currently provides:

> A person in the business of selling tangible personal property and liable for any tax under this [Use Tax] act shall keep . . . accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires. If an exemption from use tax is claimed by a person because the sale is for resale at retail, a record shall be kept of the sales tax license number if the person has a sales tax license. These records shall be retained for a period of 4 years after the tax imposed under this act to which the records apply is due or as otherwise provided by law.[32]

Under this recordkeeping requirement, the Legislature requires that any person who is both "in the business of selling tangible personal property *and* liable for" use tax—that is, retailers—keep "daily sales records, receipts, invoices, and bills of lading."[33]

---

[30] MCL 205.52(1).

[31] MCL 205.68(1).

[32] MCL 205.104a(1).

[33] *Id*.

Like the recordkeeping provision in the GSTA, this provision only requires that use tax records be retained by retailers for four years.[34]

## II. ANALYSIS

Based on the structure of the GSTA and the UTA and the cases that create presumptions to avoid double taxation, I conclude that a nonretailer consumer is entitled to a rebuttable presumption that sales tax was paid if it was due. The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption.

## A. THE BURDEN OF RECORDKEEPING

The GSTA and the UTA do not state who bears the burden of proving that sales tax was actually paid by the retailer for the purpose of attaining the STE. But between the two recordkeeping requirements, MCL 205.68(1) and MCL 205.104a(1), above, the Legislature clearly created a system in which retailers are charged with keeping for four years the records that document whether sales tax and use tax were actually paid on an item. Retailers are also charged with keeping track of "beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts,

---

[34] *Id.*

10

invoices, [and] bills of lading."[35]  These recordkeeping requirements permit the Treasury to determine whether a retailer has paid the correct amount of sales tax during the four years that retailers are required to keep such records.[36]

In my view, it is noteworthy that the Legislature did not decide to put similar recordkeeping requirements on consumers.  Under the *expressio unius est exclusio alterius* rule of statutory construction, a statute's express mention of one thing implies the exclusion of other similar things.[37]  Thus, by choosing to impose recordkeeping requirements on retailers that would permit the Treasury to determine whether sales tax was indeed paid on an item, the Legislature chose not to require consumers to document (and thereby prove) whether sales tax was actually paid.

This reading fits with other parts of the two statutes.  For example, though the GSTA prohibits retailers from "advertis[ing] or hold[ing] out to the public in any manner, directly or indirectly, that [sales tax] is not considered as an element in the price to the consumer,"[38] it also does not require that the cost of sales tax be passed on to the consumer.  Rather, a retailer may choose to pay the sales tax on an item without the

---

[35] MCL 205.68(1).  See also MCL 205.104a(1) (requiring retailers to keep records of "beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, [and] bills of lading").

[36] See MCL 205.52(1) (requiring retailers to pay a tax "equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act").

[37] See *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997).

[38] MCL 205.73(1).

11

benefit of collecting the value of the tax from the consumer. Stated differently, the retailer may elect to pay the tax out of its own pocket.[39] By permitting situations such as this, the Legislature created a scheme in which a consumer would have no knowledge about whether a retailer actually remitted sales tax to the Treasury. Despite this, the Legislature decided against putting recordkeeping requirements on nonretailer consumers.

In this case, the rule that the Treasury proposes runs afoul of the Legislature's intent as demonstrated by the language and structure of the statutes. The Treasury demands that Andrie, a nonretailer consumer, prove that the retailers from which it purchased fuel, provisions, supplies, maintenance, and repairs actually remitted sales tax to the state. With regard to the Treasury's proposed rule, I inquire: By what means can a consumer prove this? The Treasury's answer to this question is unconvincing. The Treasury suggests that only "business" consumers, like Andrie, should be required to prove that sales tax was actually remitted to the state. The Treasury also suggests that this should be easy for business consumers to prove because businesses keep records of their transactions and receipts, and the value of sales tax is easily included as a line item on receipts. I disagree with the Treasury for two reasons. First, the GSTA and UTA do not distinguish between business consumers and individual consumers.[40] The only distinction made by the statutes is between retailer consumers and nonretailer

---

[39] *Id.*

[40] See, e.g. MCL 205.94(1)(a).

consumers;[41] businesses can be either. Second, the Treasury overlooks the fact that there is no requirement that retailers include the value of the sales tax on the receipt or pass along the cost of sales tax to the purchaser. As previously stated, a retailer may choose to pay sales tax out of its own pocket.[42] If it does, a consumer may be left with no proof that the retailer meant to remit or believed that it owed sales tax.

The problem with the Treasury's proposed rule, therefore, is that it effectively eliminates the STE unless and until a consumer can produce documentation that another party paid what it owed to the state. The Treasury does not, however, suggest how a consumer ought to go about collecting such information, which would not be available until sometime after the sale. The Treasury's proposed rule is even more troublesome in this case because even the retailer may no longer know whether it paid sales tax because retailers are required to keep records for four years only.[43] Here, the Treasury required Andrie to prove that its retailers paid sales tax on some transactions that occurred more than four years prior.[44] This is unacceptable. The statute only places a recordkeeping burden on consumers if they are also retailers, and this burden only remains in place for

---

[41] See MCL 205.68(1) (requiring all retailers, whether or not they are consumers, to keep records); MCL 205.104a(1) (same).

[42] See MCL 205.73(1) (permitting, but not requiring retailers to pass along the cost of the sales tax to the purchaser by "adding to the sale price any tax levied by this [Sales Tax] act").

[43] See MCL 205.68(1); MCL 205.104a(1).

[44] The Treasury conducted audits of Andrie from the tax period beginning November 1, 1999 and ending December 31, 2004, and for the tax period beginning January 1, 2005 and ending July 31, 2006. If the Treasury was auditing Andrie for its 2006 taxes, then *at least* the 1999-2001 taxes were more than four years old.

13

four years. It seems nearly certain that the Legislature did not intend to require nonretailer consumers to retain *any* purchase and sale records. Thus, it is even less likely that the Legislature intended that consumers keep such records for longer than four years, as the majority requires from Andrie.

## B. AVOIDING DOUBLE TAXATION

Because the Treasury's rule would require every consumer to prove the occurrence of something outside of the consumer's control (that retailers actually remitted sales tax to the Treasury), the rule presents the likelihood of double taxation. The high cost consumers will face if they are forced to demand and collect affidavits or tax returns from every retailer from whom they have purchased will often make the prospect of double taxation the only viable economic alternative. Even if a consumer is willing to incur such costs, there is no guarantee the retailer would comply with the purchaser's request. As conceded by the majority, compliance with such a request "would come at the grace of the retailer." Faced with such a high cost and uncertainty, consumers may decide that it is less trouble to pay use tax to the Treasury upon demand, even if the consumer believes that the retailer paid sales tax.

To prevent the risk of double taxation in other cases, this Court has employed presumptions to clarify who is liable for sales tax and who is liable for use tax. For example, in *World Book*, this court employed a presumption that "a sales transaction is subject to a sales, not a use, tax" when the transaction "was consummated within the state" because "[o]nly a transaction consummated within Michigan is a taxable 'sale at

retail' under [the statute]."[45]  The Court of Appeals utilized a similar presumption in *Combustion Engineering*, holding that a consumer was entitled to a presumption that it need not pay use tax on a transaction when the consumer had purchased an item from a retailer with the value of the sales tax included on the receipt.[46]

The instant case is similar to *Combustion Engineering*, which recognized that although sales tax must be paid before a consumer is entitled to the STE, consumers should be afforded a presumption that sales tax was paid, despite the fact that the consumer in that case could not prove that the retailer actually paid the tax it owed.  The only difference between this case and *Combustion Engineering* is that in *Combustion Engineering*, it was clear that the retailer had passed the cost of the sales tax on to the consumer via an increase in purchase price.  At most this suggests that the retailer realized that sales tax was due.  In this case, Andrie's receipts are devoid of any mention of sales tax.  Thus, it is unclear whether Andrie's retailers charged Andrie the value of the sales tax, paid the sales tax out of their own pockets, or believed that the transaction was exempted from sales tax.

### C.  THE RULE OF *ELIAS BROS* SHOULD NOT APPLY TO THE STE

Notwithstanding the Legislature's direction that sales tax be imposed only on retailers, the textual clues found in the statutory recordkeeping provisions and this

---

[45] *Id*.  The Court in *World Book* reasoned that such a presumption would clarify the transactions upon which sales tax, as opposed to use tax, was due.  Cf. *id*. at 408-409, 411, 413-418 (holding that sales tax was not due on an out-of-state transaction and that the purchasers were therefore required to pay use tax).

[46] *Combustion Engineering*, 216 Mich App at 468.

Court's jurisprudence employing presumptions against double taxation, the majority erroneously relies on *Elias Bros Restaurant v Treasury Dep't* for its proposition that "[b]ecause tax exemptions are disfavored, the burden of proving entitlement to an exemption rests on . . . the party asserting the right to the exemption."[47] I do not believe the *Elias Bros* holding should be extended to the STE, which is a different exemption from the exemption discussed in *Elias Bros*. Indeed, the rule in *Elias Bros* has never been applied to the STE, and for good reason—the purpose behind the *Elias Bros* rule is simply not served when applied to the STE.

It is significant that the rule in *Elias Bros* is a judicial rule, not a statutory rule.[48] Judicial rules are not accorded the same weight as statutory rules.[49] Had the Legislature enacted as part of its tax structure a provision declaring that all tax exemptions are disfavored and placing on the party seeking to invoke an exemption the burden of

---

[47] *Elias Bros*, 452 Mich at 150.

[48] The judicial rule cited by *Elias Bros* can be traced back via citation to *Romeo Homes v Nims*, 361 Mich 128, 137; 105 NW2d 186 (1960), but the rule is older than that. See, e.g., *City of Detroit v Detroit Commercial College*, 322 Mich 142, 149; 33 NW2d 737 (1948) ("[T]he burden is on a claimant to establish clearly his right to exemption . . . ."); *Engineering Soc of Detroit v Detroit*, 308 Mich 539, 542; 14 NW2d 79 (1944) ("The burden of establishing the fact [that a given institution is a scientific or educational institution within the meaning of the tax exemption statutes] rests on plaintiffs . . . ."). Upon reading *Detroit Commercial College*, it becomes clear that the rule that this Court has adopted is supported by a hornbook (or perhaps several hornbooks) about how to interpret tax codes. See *Detroit Commercial College*, 322 Mich at 148-149, citing 2 Cooley on Taxation (4th Ed), p 1403, § 672. Because this Court never cites to a statute to defend the rule, it is a judicial rule, not a statutory one.

[49] See, e.g., *People v Goldston*, 470 Mich 523, 541; 682 NW2d 479 (2004) (referring to the exclusionary rule as "judicially created" and "nonbinding").

proving entitlement to it, this Court would be required to apply and follow this legislative directive without further consideration. But because *Elias Bros* is a judicially created rule, this Court can and should consider whether this rule should be extended to the STE.

This Court crafted the *Elias Bros* rule because the GSTA and the UTA do not describe who bears the burden of proving entitlement to the various exemptions available under the UTA. In general, the *Elias Bros* rule is premised on the notion that "tax exemptions . . . represent the antithesis of tax equality."[50] That is, the tax structure assumes taxpayers will be taxed according to law and, when an exemption is employed, tax inequality results because the taxpayer invoking the exemption is paying less than those not afforded the exemption.

The majority claims that creating a presumption that sales tax was paid if it was due will violate the rationale of the *Elias Bros* rule because it will tend to create inequality by favoring a tax exemption. In fact, to apply the *Elias Bros* rule to the STE, as the majority does, would have the effect of creating *greater* inequality of taxation. As explained previously, the Legislature created a system of sales tax and use tax that together creates one 6% tax on each transaction for the sale of personal property in Michigan. If this Court applies *Elias Bros* to the STE, consumers may be forced to prove that their retailers actually paid sales tax to the state. This rule presumes that a Michigan retailer violated the law by not paying sales tax when it was due, which is contrary to the common law "presumption, that every man has conformed to the law, [which] shall stand

---

[50] *Elias Bros*, 452 Mich at 150.

till something shall appear to shake that presumption."[51]  Furthermore, it is also unlikely that a consumer could prove that a Michigan retailer complied with the law.  Because it is unlikely that consumers will be able to prove retailer compliance, the *Elias Bros* rule will result in double taxation on property the Legislature intended to be taxed only once.  That is, since it is common for retailers to reimburse themselves by adding the value of the sales tax to the retail price, if any consumer cannot prove that their retailer paid sales tax to the state, that consumer could be forced to both reimburse the retailer for the value of the sales tax *and* pay use tax.  This would treat one consumer differently than other consumers, leading to greater tax inequality.

The *Elias Bros* rule simply is not useful when applied to the STE because the consumer does not possess the information it will be forced to produce—that is, information about whether a retailer actually remitted to the state the sales tax due.  On the contrary, as previously established, such information would be costly, if not impossible, for the majority of consumers to obtain.  It serves no purpose for this Court to

---

[51] *Tecom Inc v United States*, 66 Fed Cl 736, 758 n 26 (2005); see also *id*. at 758 (citing English common law and United States Supreme Court precedent from the 1800s for the maxim that persons are presumed to have conformed to the law unless and until evidence appears to the contrary).  The appropriate legal maxim for this is "*Omnia praesumuntur rite, legitime, solemniter esse acta donec probetur in contrarium*," meaning "All things are presumed to have been properly, lawfully, formally done, until proof be made to the contrary."  See also *Gray v Gardner*, 3 Mass 399 n 1 (1807) ("*Omnia presumuntur rite et legitime esse acta donec in contrarium probetur*."); cf. *Tucker v Streetman*, 38 Tex 71, 73 (1873) ("[I]n the civil relations of life . . . a party is presumed to have acted legally until the contrary is proven.").

This presumption is also recognized in Michigan law. See *Palmer v Oakley*, 2 Doug 433, 462 (Mich, 1847).

extend *Elias Bros* on its own initiative so it can force consumers to produce information they do not have and cannot obtain with reasonable certainty or at a reasonable cost.

### D. THE PRESUMPTION AND REBUTTING THE PRESUMPTION

Because the GSTA and UTA already supply a recordkeeping requirement, and since this Court interprets those Acts in a way that avoids double taxation, I conclude that this Court should afford consumers a presumption that if sales tax was *due* on a transaction, that it was actually *paid* by the retailer. Nonetheless, the Treasury should be able to rebut such a presumption.[52] The Treasury may rebut this presumption by producing some evidence, circumstantial or otherwise, that sales tax was *not* paid or that the consumer transacted with an erroneous belief that, if true, would have exempted the transaction from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption.

In this case, the Treasury has presented evidence sufficient to rebut the presumption that sales tax was paid by the retailer. Specifically, there is circumstantial evidence that at least one of the contracting parties represented, at the time of the sale, facts that would have exempted the sales of fuel, provisions, supplies, maintenance, and repairs from both sales tax and use tax. This circumstantial evidence came to light at the Court of Claims, as Andrie claimed that its fuel, provisions, supplies, maintenance, and

---

[52] Although critical of the notion that the consumer should be entitled to a presumption, it is worth noting that the majority also applies a presumption, it is just a different one than the one I propose. Whereas I would apply a presumption that sales tax was paid by a retailer if it was due, the majority would apply a presumption that sales tax was paid by a retailer if the retailer charged the value of the sales tax to the consumer.

repairs were entitled to a use tax exemption under MCL 205.94(1)(j), which exempts purchases of fuel, provisions, supplies, and tangible property required to maintain and repair vessels "designed for commercial use of registered tonnage of 500 tons or more."[53] Any purchase exempted from use tax in MCL 205.94(1)(j) also qualifies for an exception from sales tax under MCL 205.54a(d).[54] Therefore, because there is evidence that the retailer did not pay sales tax on the item, the Treasury has rebutted the presumption that sales tax was paid.

Based on this portion of the record, I conclude that Andrie is not entitled to the presumption that its retailers actually paid sales tax on the transactions for fuel, provisions, supplies, maintenance, and repairs for which it claimed an exemption under MCL 205.94(1)(j). If Andrie cannot prove that the retailers actually paid sales tax, Andrie must remit use tax to the Treasury. I would remand this case to the trial court for further proceedings consistent with this dissent.[55]

---

[53] The Court of Appeals held that Andrie did not qualify for this exemption, see *Andrie, Inc v Treasury Dep't*, 296 Mich App 355, 365-366 (2012), and this Court did not include this issue among those to be briefed by the parties. See *Andrie, Inc v Dep't of Treasury*, 493 Mich 900 (2012).

[54] In its First Amended Complaint, Andrie stated: "Both the Sales Tax Act and the Use Tax Act provide an exemption from sales and use tax for commercial vessels used in interstate commerce that are produced upon special order and for the fuel, provisions, supplies and tangible property required to maintain and repair the vessel. MCL 205.54a(d); MCL 205.94(1)(j).".

[55] Andrie, on the occasion that it is not able to prove that sales tax was paid, may be able to implead any retailer from whom it purchased fuel and sue for relief based in contract. See generally *Swain Lumber*, 314 Mich 437.

Andrie may also be able to make an argument that the Treasury still bears the burden of proving that sales tax was not paid on sales that occurred more than four years prior to

## III. CONCLUSION

Because MCL 205.52(1) only places the burden of paying sales tax on retailers, and not on consumers, this Court should afford consumers a presumption that retailers actually paid sales tax if it is evident that sales tax was due under the statute. I would permit the state to rebut this presumption by producing some evidence, circumstantial or otherwise, that the tax was not paid or that the consumer transacted with an erroneous belief that, if true, would have entitled the transaction to be exempted from sales tax. Once the presumption is rebutted, the burden returns to the consumer to present evidence that the sales tax was actually paid or to establish that the consumer was properly entitled to some other exemption. I would remand to the trial court for further proceedings consistent with this opinion. I would not retain jurisdiction.

Brian K. Zahra

---

the Treasury's demand that Andrie pay use tax. This is because the recordkeeping statutes' requirement that retailers retain their sales records for only four years could make it difficult or impossible for a nonretailer consumer to obtain an affidavit from a retailer that sales tax was actually paid, thereby leading to double taxation.